## LEVIN R. MARSHALL *v.* JAMES MINTER, Admr., etc.

1. CHANCERY PRACTICE—INJUNCTION.—Equity will regard a party applying for an injunction to restrain the execution of legal process, as proposing or consenting, that if such injunction be improvidently obtained, or the relief asked shall be refused, the party so applying will put his adversary in the same condition he was at the time the injunction was granted.

2. SAME—LIMITATION.—Where a judgment creditor is restrained by the interposition of a court of equity, it is inequitable that such restraint should be the means of depriving a party of a legal right, by continuing the injunction until the legal right is barred by limitation, and then dissolved.

3. EQUITY—REMEDIES IN SPECIAL CASES.—Where, on the dissolution of an injunction restraining execution of a judgment at law, it is found that the interest accrued

on the judgment renders the amount greater than the penalty of the injunction bond, though at law the responsibility of the obligors would be limited to the amount of the penalty, a court of equity will substitute a remedy of its own, and allow interest on the penalty of the injunction bond, to an amount not exceeding the principal and interest of the judgment.

4. SAME.—And when, on such dissolution, it is found that while execution has been thus unjustly restrained by the act of the debtor, the judgment has been barred at law by the statute of limitation, though at law an injunction shall not, *propria vigore*, stop the bar of the statute, equity will again furnish a perfect remedy by enjoining the judgment defendant from pleading limitation.

5. GENERAL PRINCIPLE.—Equity will afford relief against any legal advantage unconscientiously obtained, or sought to be unconscientiously used.

Appeal from the chancery court of Carroll county. COTHRAN, J.

The appellant assigned the following errors :

1st. The court erred in sustaining the demurrer of defendant to the original bill.

2d. The court erred in sustaining the demurrer to the amended bill.

3d. The court erred in dismissing the original, amended and supplemental bills.

*F. W. Keyes,* for appellant.

No principle of equity is more clearly and firmly established than that " a man shall not be benefitted by his own wrongful acts to the injury of another." It has recently been repeatedly recognized and enforced by this court. 30 Miss. Rep., 135 ; 31 ib., 107–9 ; 33 ib., 173 ; 37 ib., 579 ; 39 ib., 116.

Invoking this principle, we have come into equity, seeking relief against an advantage at law, which Samuel B. Marsh, now deceased, and the defendant, his administrator, have acquired over the complainant by a protracted and fruitless litigation carried on by them for long years in the superior court of chancery, enjoining the collection of a judgment at law, in favor of complainant, until all adequate remedies at law were destroyed. For the remedies thus lost, the object of this suit is to obtain the substitution of a remedy which shall be adequate to compel the defendant to discharge the duties of his intestate to the complainant, as evidenced by his bonds filed as exhibits to the bill; which obligations are, to pay and satisfy a judgment obtained by complainant against

him in the circuit court of Carroll county, July 12, 1838, and interest from its rendition to the present, and costs and damages sustained by reason of said injunction.

The prayer of the bill is in the alternative for, either,

1st. A decree based upon the bonds for the amount actually due ; or,

2d. An injunction restraining the defendant from pleading the bar of the statute of limitations to proceedings at law upon the original judgment—so long enjoined. ×

To either relief the complainant is entitled, and the bill should have been sustained.

The bill charges that the defendant, and before him his intestate, protracted the injunction suit for so long a time that the debt (principal and interest on the judgment enjoined, costs, and damages), intended to be secured by the bonds, far exceeds the penalty of said bonds.

In an action at law on the bond, judgment could only be recovered for the penalty of the bond. Wild v. Clarkson, 6 Term, 303 ; Strong v. Holmes, 7 Cow., 325 ; 3 ib., 151. Thus if driven to a suit at law on the bonds, the complainant would lose near one-third of the debt due him; but in equity, where the bond is given to secure the payment of a sum of money mentioned in the recitals of the bond, and payment is delayed by the acts of the obligor until the sum with interest due thereon exceeds the penalty, the court will decree and compel the payment of the amount actually due. Duvall v. Terry, Showers' Parl , C., 16 ; Jeudwine v. *Agate*, 3 Sim., 129 (S. C. 5 Cond. Eng. Ch., 51) ; Grant v. Grant, 3 Sim., 340 (S. C. 5 Cond. Eng. Ch., 144) ; Paltney v. Warren, 6 Ves., 73 ; Hale v. Thomas, 1 Vern., 349 ; Bond v. Hopkins, 1 Scho. & Lefr., 413 ; Mower v. Kip, 6 Paige, 88 ; Baker v. Morris, 10 Leigh, 285 ; Harris v. Clapp, 1 Mass., 308 ; Pitts v. Tilden, 2 ib., 118.

The object of an injunction bond is to indemnify fully, the party restrained. It is not a matter of choice with the party enjoined to accede to the terms of the contract. It is forced upon him, Cox v. Vogh, 33 Miss., 189, and if an instrument

intended as an injunction bond, be not executed under seal, upon which the writ issues, it is a valid contract at common law. Ib., 189. The recital in the condition of a bond, is evidence of the agreement between the parties. Jeudwine v. Agate, 3 Sim., 129.

The first bond recites the judgment at law which is enjoined, and the obligation of Marsh (his contract is to pay that judgment in case he fails to maintain his injunction). To pay and satisfy a judgment which bears interest, is to pay the principal. The second bond recites the said judgment, and the obligation of Marsh. His contract is to well and truly pay and satisfy all damages and costs, within thirty days after dissolution, which may result from the injunction issued at his request. What under this bond, is the measure of damages? The judgment enjoined with interest, and the costs to the obligee.

At law we cannot enforce the contract, the obligation of Marsh, viz. : to pay and satisfy the judgment of 1838 against him, and costs and damages resulting from the injunction ; because the penalty of the bond is the limit, beyond which we cannot go, it matters not if our debt were treble the penalty ; and as a general rule, courts of equity follow the law ; but under special circumstances they will compel the obligor to pay the actual sum he owes, notwithstanding it exceeds the penalty. Duval v. Terry, etc., *supra*.

But it is said, we have been guilty of *laches* in not apply-plying to the chancellor to modify the injunction, or in not disregarding the injunction, so as to keep the judgment enjoined alive ; that we failed to revive the judgment by *scire facias* against the administrator, and that the judgment is extinct because of such *laches* on our part. The judgment at law has nothing to do with it except as data, by which to ascertain the sum which the obligor promised to pay. Berry v. Bacon, 28 Miss., 325. In Grant v. Grant (*supra*), the chancellor said that "if a party chooses by improper procedings to prevent a creditor from receiving payment as soon

as the creditor ought, those proceedings shall not operate to the prejudice of the creditor, but he is entitled to receive what is really the amount due to him."

In Jendwine v. Agate (*supra*), suit was brought in equity by the obligees against the administrator of the deceased obligor to recover the sum of money which the obligor had promised to pay in his bond, the vice-chancellor remarking, that when there is a distinct agreement that one thing shall be done, as the payment of a sum indefinite in amount (as here), " then, notwithstanding the agreement appears in the form of a bond with a penalty, the court will consider that the recital in the condition of the bond is evidence of the agreement, and will not limit the relief it gives, to the amount of the penalty."

In Bond v. Hopkins, 1 Scho. & Lefr., 413, the court held that the obligor should not take advantage of the delay, and decreed that he should pay the debt with interest, notwithstanding it exceeded the penalty. Showers' Parl C., 16; Hale v. Thomas, 1 Vern, 349; 1 Salk., 154.

In the case of Mower v. Kip, 6 Paige, 89, the chancellor held, that " upon a money bond given by a principal debtor, the obligor is both legally and equitably liable for the whole amount of the principal secured by the condition of the bond, although such amount exceeds the penalty of the bond;" and it seems that interest by way of damages for the detention of the debt during the time the defendant delays its collection by an improper or protracted litigation may be recovered even as against a surety." And *a fortiori*, it would seem, does this principle apply to to the principal debtor. See, also, Judge & Co. v. Haydock, 8 New Hamp., 491; Baker v. Morris, 10 Leigh, 285; 1 Mass., 408; 2 ib., 118; 5 Munf., 494; 3 Caine's Cases, 48; 4 Day, 30; 4 Dall., 149; 6 Greenl., 14; 1 Ry. & Moody, 105; 2 Burr, 1059.

2. But the bill is sustainable upon the equity that the bar of the statute of limitation has attached to all action at law upon the judgment, in consequence of the injunction sued

out by the judgment debtor and sustained for the length of time prescribed by the statute to attach the bar, against which the bill prays relief.

"A debtor at whose instance an injunction has been issued and kept in force seven years, restraining the collection of a judgment against him at law, will be enjoined by a court of equity from setting up the statute of limitations as a defense to the collection of the judgment." Suggs v. Thrasher, 30 Miss. Rep., 135; 31 ib., 107; 33 ib., 173; 37 ib., 597; 39 ib., 165.

But it will be insisted upon the authority of Robertson v. Alford, 13 S. & M., 513, a case at law, that the judgment creditor ought to have taken the steps necessary; such as applying to the chancellor for a modification of the injunction, so as to permit the issuance of executions, or to have issued executions in disregard of the injunction, and thus kept the judgment alive. The issuance of executions upon judgments, where one has been issued within a year and a day, is the only recognized mode of keeping a judgment alive between the original parties to it. A writ of *scire facias* cannot issue. Locke v. Brady, 30 Miss., 21. This was prohibited by the writ of injunction. The same argument and the same authority relied upon here was used by counsel for appellant in the case of Suggs v. Thrasher; but the court there said: "Why was it that the plaintiff at law delayed this long period to enforce his judgment? The response is, that the debtors, by the means they employed, forced him to delay. * * * He but obeyed the process of the court, issued and kept in operation by the debtors, in the fruitless litigation which they carried on for this long period of time. * * * He ceased to prosecute his remedy on his judgment, because such was the command of the process, which issued in pursuance of the prayer of the debtors. * * * If execution could go into the hands of the sheriff at all, it would be for complete execution, and not for part," etc. Ib., 143.

The object—the purpose of the *scire facias*—to revive a judgment against the administrator, is to give him notice

that he may show cause why the creditor shall not have execution of the judgment, to be levied of the goods and chattels in his hands, belonging to the estate of the deceased debtor. Its sole object is to have execution. 2 Harris' Entries, 460–728, and not merely to revive the judgment against the administrator, by name. " And the law does not countenance vain and useless things, especially when unnecessary costs must be the result of the abuse of its process." Locke v. Brady, 30 Miss., 27.

At law, the statute of limitations commenced from the date of the judgment ; but in equity, a useless, fruitless litigation, or other wrongful or fraudulent conduct prevents the running of the statute, and it begins to run only at the termination of such conduct. Upon what other theory can the rule of equity courts, which denies to those who have been guilty of such conduct, the benefit of the bar of the statute, be sustained. But it is said that the case of Suggs v. Thrasher is not analogous to this case, and that the rule recognized by this court, in that case, cannot be applied to the case at bar. But this court, in the case of Edwards v. Gibbs, administrator, etc., 39 Miss., 166, held the administrator responsible for the " unconscientious acts " of his intestate, so far as to deny to him the benefit of the bar of the statute of limitations, an advantage at law acquired by such acts. The weight, or rather the universal rule of the authorities, both English and American, upon the question, raised in this case, sustain the following propositions :

1. That where a bond is given to secure the payment of a debt mentioned in the recitals of the condition, and payment is delayed by the acts of the obligor, until the amount of that debt, principal, interest, etc., exceeds the penalty, a court of equity will decree the payment of the amount actually due, notwithstanding it exceeds the penalty.

2. That when a debtor sues out and keeps in operation an injunction restraining the collection of a judgment against him at law, for such length of time as will suffice for the bar of the statute of limitations to attach to legal remedies to

enforce the collection of the judgment enjoined, he will be enjoined by a court of equity from setting up the bar to an action at law to enforce the collection of that judgment. And these two are but subdivisions of the general rule of equity, " that a party shall not avail himself of an unconscientious advantage obtained by his own act, and without the fault of his adversary." 6 Ves., 73; 10 ib., 549; 3 Sim., 340; ib., 129; Showers' Par. Cases, 15; 1 Ball. & Beat., 239; ib., 262; 3 Rus., 589; 3 Atk., 517; 3 Brown P. C., Toml. Ed., 607; 4 ib., 517; 1 Scho. & Lefr., 413; 9 Jur., 717; Eq. Abr., 91; 1 Salk., 154; 1 Vern., 549; Bacon's Abr., 239; 2 Brown P. C., 333; 1 East, 436; 17 Ves., 106; 11 Bligh., 158–187; 1 Ry. & M. 105; 21 E. C. Law Rep., 391; 1 Wm. Sand., 58, note 1; 6 Paige Ch., 36; 8 N. Hamp., 491; 10 Leigh, 285; 1 Mass., 308; 2 ib., 118; 5 Munf., 494; 3 Cain's, 48; 1 Paine C. C., 661; 4 Day, 30; 4 Dall., 149; 6 Greenl., 14; 2 Burr, 1094; 2 Story Equity Juris., §§ 903–1316 (a), § 1521; Coop. Eq., 143; Mitf. Eq., by Jeremy, 134, 135; 2 Eden's Inj., ch. 16, pp. 408, 409; 3 Mad., 181; 10 S. & M., 501; 13 ib., 553; 30 Miss., 135; 31 ib., 107; 33 ib., 183; 37 ib., 579; 39 ib., 166, etc.

*Fisher*, for the appellee.

The bill was demurred to and the demurrer sustained, and this may be regarded as the only error assigned. This court settled the law in the case of Robertson v. Alford, 12 S. & M., 509, that an injunction did not stop the running of the statute of limitations; and what is the reason given for it? That the injunction can, at any time, be modified by the court, upon the application of the party interested, so as to enable him to sue, if there is danger of the statute becoming a bar. This was the opinion of Chief Justice Sharkey.

The same doctrine is held in the case of Kilpatrick v. Byrne et al., 25 Miss., 580; and Judge Yerger in the opinion there delivered, in express terms, affirms and follows Judge Sharkey's opinion. The doctrine, then, is fully settled, that before an injunction can be modified by a court, so as to enable a party to see when there is danger of the statute of

.limitations barring the claim, the injunction does not at law or in equity, stop the running of the statute. Now in this very case, an application could have been made at any time, by the creditor, to have the injunction so modified that Minter could have been such, either by *scire facias*, or began action of debt on the judgment. He had his choice of remedies, and a mere suggestion that the statute was likely to become a defense, would have been sufficient. This is expressly ruled in the above cases.

But the counsel for plaintiff in error, rely upon the case of Suggs et al. v. Thrasher et al., 30 Miss., 141. In this last case the injunction was dissolved at the June term 1848, of the superior court of chancery. The parties took their appeal to the high court, and the case was not decided in that court, until March, 1853. Here the injunction was by virtue of this appeal, kept in force from 1848, until 1853, in a court which had no power to modify the injunction, because it will not be pretended that the high court could do more than review what the court below had done. As a court of original jurisdiction, it had none, and hence the creditor was without remedy as having the injunction modified after the case got into the high court. The decisions of the court are as uniform as they can be made on the point, that when a party can have an injunction modified, and fails to do so, the statute will continue to run.

When a case is in the high court, however, where no such application can be made, the case of Suggs v. Thrasher, says that the party shall not set up the defense, because there was no remedy or means of modifying the injunction.

SIMRALL, J. :

Levin B. Marshall recovered judgment in the circuit court of Carroll county, against Samuel B. Marsh, the intestate, on the 12th of July, 1838, for the sum of $3,065 64. On the 8th of March, 1869, injunction was granted, at the instance of Marsh, which was served on Marshall and the sheriff of Carroll county, commanding them " to refrain from all further

proceedings and collecting on execution issued on said judgment, and from any further proceedings against said Marsh, touching any of the matters in said bill contained." It is not material to set out the merits of the bill in chancery, brought by Marsh against Marshall, praying for, and which induced the granting of the injunction; nor the various stages and steps of the long and protracted litigation begun originally in the superior court of chancery, and subsequently transferred to the chancery court of Adams county, where, in 1858, for want of prosecution, the suit was dismissed at the instance of Marshall. These facts are set out at large, in the bill of complaint brought by Marshall in the chancery court of Carroll county, which charges, in effect, that the delay in bringing the injunction suit to a final trial, was caused by Marsh, who interposed obstacles in the way. And that, because of the delay, the amount due Marshall for principal and interest on his judgment, far exceeds the penalty of the injunction bond ($7,000), and, therefore, he has no adequate remedy at law, on the bond. That since the dismissal of the injunction suit, Marshall had sued out *scire facias* to revive his judgment, to which Minter, administrator of Marsh, was about to plead the statute of limitations. The prayer is, that Minter, administrator, pay to the complainant, the amount due upon his judgment, as recited in the injunction bond, or that he be restrained from pleading the statute of limitations to the *scire facias*. The defendant demurred, setting up, 1st, the bar of the statute of limitations to the judgment; and 2d, want of equity.

In April, 1867, an amended and supplemental bill was filed, to which a demurrer was sustained, and both bills were dismissed.

Marshall brings the case to this court, by appeal, and assigns for error, the dismissal of his bill.

The first question presented by the record is, whether the complainant is entitled to any relief on the injunction bond, and if any, to what extent. At law the measure of responsibility on the obligation is the penalty. And though inter-

est on the original indebtedness may exceed the penalty, the excess cannot be recovered. Equity courts, borrowing their principles probably from the Roman civil law, interfere in meritorious cases to relieve parties from penalties and forfeitures. It is a well established and most beneficial branch of jurisdiction. The foundation of its relief is, if the party can obtain a performance of the principal obligation, as the payment of his money or damages, he gets all that he expected, and all that in justice he is entitled to—the penalty being regarded in the light of a security.

At law a mortgage is a conveyance on condition. Upon forfeiture of the condition, the title is absolute. The equitable doctrine of redemption rests upon the idea of a relief from a forfeiture upon a performance of the principal duty, payment of the debt, treating the conveyance mainly as a security. Considering the penalty of a bond as primarily meant and intended, to secure the enforcement of a debt or other duty, it would outrage conscience and justice to permit it to be used as an engine of oppression by a perversion to some other purpose. But there must be a reciprocity in the principle in favor of the party for whose benefit the penalty is made. If at any time it fails to be an adequate security and protection to him, for whose benefit it was created without *laches* or fault on his part, but he is postponed or hindered in his "legal right" to enforce it by the act or procurement of the other party, equity would, through its own jurisdiction, give redress. That redress, so far as yet extended, is interest on the penal sum, although at law the recovery would be limited to the penalty. 2d Story Eq. Juris, p. 538, § 1316.

If a mortgagor has given a penal bond as well as the mortgagee for the security of the debt, in a foreclosure suit, equity will decree all the interest, although in excess of the penalty of the bond, and though the mortgage be given by a surety. Clark v. Abingdon, 17 Vesey, 106.

If there has been unfounded and protracted litigation, interest beyond the penalty of the bond will be allowed; if thereby

the obligee has been deprived of his "legal rights," when they might otherwise have been made available at law, the court of equity will substitute a remedy of its own for the original legal right of which the obligee has been unjustly deprived by the misconduct of the obligor. East India Co. v. Champion, 11 Bligh., 459. In the case of Harris v. Clap, & Whittemore, 1 Mass. Rep., 312, *et seq.*, it was held that interest by way of damages on the penalty might be allowed against both principal and his surety. The case arose on a penal bond to abide by an award.

We are of opinion, therefore, that Marshall is entitled (if he shall choose to accept such redress as the chancery court can afford through its own mode of relief) to interest on the penalty of the injunction bond from the date of the dismissal of Marsh's bill in 1858; not, however, to go beyond the principal and interest of the judgment.

The second question made is, shall Minter, administrator, be restrained from pleading the statute of limitations to the *scire facias*.

In the cases of Robertson v. Alford, 13 S. & M., 509, and Kilpatrick v. Byrne et al., 25 Miss. Rep., 550, it was ruled that a chancery injunction did not stop the running of the acts of limitation, upon the ground that no such exception is made in the statute, and courts have no power to engraft upon it exceptions not provided for; and secondly, that it was competent for the debtor to have moved the chancery court so to modify the injunction as to permit suit to be brought, so as to save bar. Both of these cases were at law, and they are presented by counsel for defendant in error as controlling authority in this case. The judgments in those cases are undoubtedly correct in holding that an injunction *propria rigore* does not stop the bar of the statute. But here the complainant by implication concedes that the bar has attached at law, but that he has presented such a state of facts as would make it inequitable and against conscience to allow Minter, the administrator, to take advantage of his "legal right."

Lord Elden said: "If there be a principle in which courts of justice act without scruple, it is to relieve parties against that injustice occasioned by its own acts, or over-sight, at the instance of parties against whom relief is sought." Again, he says: "I consider persons asking an injunction as impliedly saying they ask it upon the terms of putting the plaintiff in exactly the same situation as if they had not been entitled." He considered the suggestion, made at the argument, that on application, the injunction might have been suspended or modified, so as to have allowed suit at law, to save the bar or other loss or hazard that might be incurred, but dismissed it as deserving no weight, grounding his judgment on the fact (?) that it was the " act of the court, procured at the instance of the party seeking the bene-fit of the ' legal advantage.' " Putney v. Warren, 6 Vesey, 90. Equity will remove the legal bar, proceeding from lapse of time, as it would any other legal advantage unconscientiously obtained or sought to be unconscientiously used.

In the case of Bond v. Hopkins, 1 Shal. & Lefr., 428, *et seq.*, certain parties had wrongfully obtained possession of lands (under color of instruments finally condemned), during the investigation of which they were protected by the court. They were not permitted to avail themselves of any length of time pending the investigation, as a bar to him, who ulti-mately proved to have the rightful title. And in such case, if aid cannot be extended to the party, in a court of law, chancery will proceed to meet out full relief.

In Suzet v. Thrasher, 30 Miss. Rep., 141, the debtor was restrained from setting up the bar of the statute, because he, by his own act, had interfered, and used the process of the court to prevent legal proceedings. Work v. Harper, 31 Miss. Rep., 119, was a controversy between a mortagee and judg-ment creditor. The mortgagee enjoined the execution levied on property to which he claimed a superior title. The injunc-tion was continued until the lien of the judgment expired. The language of the court was: " The loss of the lien has been occasioned by himself, against the will of the appellee

without any fault on his part, and upon no principle of equity could he be held to his right to the benefit of the mortgagee." Wilkinson v. Flowers, 37 Miss. Rep., 581.

The fact of enjoining the judgment until the bar attached, was held to be such an unconscientious advantage, that the debtor should be enjoined from setting it up.

We fully concur with Lord Elden, that where a party gains a legal advantage by the act or omission of the court, equity ought not to allow him to avail of it; that if the advantage consists in the bar of the statute of limitations, accrued pending an injunction, although the creditor might have had, on motion, a modification of the restraining ·order, so as to save his right, his omission to make the application shall not prejudice him. Story states the general rule thus : " A party shall not avail of a legal right for the purpose of fraud, oppression, injustice, or harsh injury.

Let the decree of the chancellor be reversed, and judgment entered here, overruling the demurrer, and cause remanded for further proceedings.