ALKAHEST LYCEUM SYSTEM *v*. FEATHERSTONE ET AL.

[74 South. 151, Division B.]

UNINCORPORATED ASSOCIATIONS. *Liability of officer. Contract.*

The officers of an unincorporated civic league, who signed a contract between the league, and a Lyceum System for certain entertainments at an agreed price, are individually liable for such price, although they did not think or believe that they would be personally liable.

APPEAL from the circuit court of Tate county.

HON. E. D. DINKINS, Judge.

Suit by the Alkahest Lyceum System against Mrs. H. C. Featherstone and others. From a judgment for defendants, plaintiff appeals.

Appellant is a corporation organized for the purpose of providing the public musical, literary, and other forms of entertainment. It has a list of attractions which it offers during each season. Appellees are officers of an unincorporated society in Senatobia, Miss., called the Civic League. Appellant was plaintiff in the court below, and brought this action to recover three hundred and twenty-five dollars as a total consideration which the Civic League of Senatobia agreed to pay for certain entertainments to be furnished during the seasons of 1913 and 1914. The agreement is in writing, and extracts from this document read as follows:

"This agreement made this day and year written, between the Alkahest Lyceum System, of Atlanta, Ga., party of the first part and Civic League, party of the second part, witnesseth: That the party of the first part hereby agrees to furnish party of the second part with the following lyceum attractions, to appear in Senatobia, Miss., during the season of 1913, for and in consideration of the sum of three hundred and twenty-five ($325) dollars:

| Attraction. | Price. | Approximate Time. |
|---|---|---|
| Apollo Con. Co. | $100. | |
| Mrs. Chilton | 50. | |
| Ross Crane | 50. | |
| Orphean Male Quar- | | No date to be giv- |
| tette | 75. | en on Thanksgiving |
| Elias Day | 50. | or in two weeks of |
| 1 sub. L. & T. | 1. | each other. |

"Subject to president's acceptance."

It appears from the testimony that the Civic League is simply an unincorporated local organization "for the improvement and betterment of the town of Senatobia, for beautyfying and for civic pride." Appellee, Mrs. Feather-

stone, was president of this organization, while Mrs. Rush, the other appellee, was chairman of the finance committee at the time the contract was executed. The circumstances under which this agreement was signed appear to be about as follows: Mr. Bell, the agent of appellant, requested a conference with the officers and members of the Civic League with the view of entering into a contract to furnish them a series of entertainments. It so happened that on the day Mr. Bell was in Senatobia for this purpose there was to be a funeral which all the leading members of the League desired to attend, the mother of one of the members having died. The funeral had been arranged for four o'clock p. m. and, at the solicitation of Mr. Bell, Mrs. Featherstone agreed to a conference with him at her home at three o'clock preceding this funeral. Mrs. Featherstone invited to this hurried conference a number of the members and there was only a short discussion of the contract and a rather hurried execution thereof. When the question of signing the contract came up for discussion, some of the women inquired, ''Who shall sign it?'' and Mr. Bell thereupon stated that it did not make any difference, ''just so some of you sign it.'' Thereupon the contract was duly signed by Mr. Bell, acting for his company, and by Mrs. Featherstone and Mrs. Rush, as officers of and on behalf of the Civic League. It appears that nothing was said about the personal liability of either one of the officers or members, and it further appears that these good ladies did not read over the contract before they signed it. There is, however, no controversy as to the material terms or provisions of the contract. After the contract had been executed, Mrs. Featherstone attempted to make sale of tickets for the first attraction, and, failing to arouse the necessary interest, she first requested a reduction of the total consideration from three hundred and twenty-five dollars to two hundred dollars. The company declined to reduce the price, and thereupon the officers of the Civic League attempted to wire a cancellation of the entire contract. These communications

were had by wire and by letter. Appellant company declined to accept the cancellation, but in due course provided each of the attractions called for by the contract, except one listed at fifty dollars. The various persons whose talent was engaged by appellant appeared at Senatobia at the time duly scheduled for each, and offered their professional services, but the Civic League declined to make any arrangements for the reception of this talent, declined to furnish an auditorium, or to do anything in the way of giving any of the performances.

The cause was submitted to the jury under instructions for both parties. The verdict was returned in favor of the defendants, and from the judgment entered in pursuance of this verdict, appellant appeals. The court refused the following instructions asked for by the plaintiff:

"The court instructs the jury that if they believe from the evidence that plaintiff furnished the several attractions as provided in the contract, and the defendants have not paid any part of the price agreed upon, then the jury will find for the plaintiff the amount stipulated in the contract, except fifty dollars for Elias Day, and in addition thereto such an attorney's fee as the evidence shows plaintiff was required to pay, provided the evidence further shows such fee was reasonable."

"The court instructs the jury to find for the plaintiff as to all the attractions at the price named in the contract sued on, except as to Elias Day, with interest at six per cent. per annum from March 8, 1913, and in addition thereto the sum of fifty dollars as attorney's fee."

The Court also modified the following instructions which, on account of the modification, plaintiff declined to use:

"The court further instructs the jury that the addition of the abbreviations Pres. and Sec. & Treas. does not necessarily relieve the signers of the contract from individual liability," The word "necessarily" having been added by the court.

''The court further instructs the jury that under the contract in evidence (if the minds of the parties thereto were agreed as to its contents) the defendants were not authorized to cancel the contract without the consent of plaintiff and the jury will not consider the defendants' action in attempting to cancel the same.'' The words added by the court are shown in parentheses.

The court granted to appellees instruction No. 1 in the following language:

''The court instructs the jury that there can be no contract between two parties on any matter unless their minds meet or come together on the matters to be included in the same; and if the jury believes from the evidence in this case that the defendants never understood that they were to be individually bound, and that plaintiff so understood, but that the Civic League alone, as an organization, was to be bound, and that they so understood the nature of their understanding by reason of the declaration and conduct of the agent of the plaintiff, then the jury should find for the defendant.''

The same thought is expressed in other instructions given appellees.

*L. F. Rainwater,* for appellant.

The witnesses all say the contract was made with the Civic League, and the contract itself so states, but the evidence further shows that the agent of appellant insisted that it should be signed by some of the members. The Civic League being a voluntary unincorporated society had no legal existence. It was a legal non-entity, and incapable of making a contract, or of being sued.

It is argued that the defendants did not expect to be held personally liable and did not make any contract as individuals. It was not necessary that they should have so understood the law, but having signed the contract they must be held liable in accordance with its legal effect regardless of what they thought about it. The case of

*Lewis* v. *Tilton et al.,* 19 N. W. 911, is directly in point. The defendants were members of a benevolent society designated at the "Ottumwa Temperance Reform Club," not an organization for profit, but a purely benevolent one. They made a contract with the plaintiff in that case on behalf of the society of which they were members, and were held personally liable. In the concluding part of the opinion the court said:

"But it is said these defendants did not contract. They certainly" represented that they had a principal for whom they had the authority to contract. They, for, or on behalf of an alleged principal, contracted that such principal would do and perform certain things. As we have said, there is no principal, and it seems to us the defendants should be held liable, and that it is immaterial whether they be so held because they held themselves out as agents for a principal that had no existence or on the ground that they must, under the contract be regarded as principals, for the simple reason that there is no other principal in existence.

There was no question that there was an organization calling and styling themselves the "Ottumwa Temperance Reform Club," so the court, in saying there was no principal in existence, mean to say that there was no legal entity in the principal for whom the defendants acted, and therefore they must be held individually liable.

Officers of a club are personally bound when they purchase wine in the name of the club. 7 Cyc. 263; 4 Cyc. 310-311. This was a voluntary association not for profit, but for the pleasure only of the members and their friends.

The case of *Evans* v. *Lilly & Co.,* 95 Miss. 58, is decisive of the case at bar. There seems to be no material difference in the two cases, they appear to be exactly on all fours, even to the signatures having affixed to them abbreviations showing the official position the signers held, as secretary, treasurer etc. The organization they represented, the Grand Commandery Knights Templar,

was a voluntary, unincorporated society so far as the proof showed. In that case peremptory instruction was given on behalf of plaintiff and this court affirmed it. FLETCHER, J., in rendering the opinion quotes with approval the case of *Lawler* v. *Murphy,* 58 Conn. 294, 8 L. R. A., in which it is held: ''That the individual members are liable for the contracts of the association, without regard to the question as to what was intended by the members in regard to liability, and despite the fact that the members mistook the law.'' That case further holds that the addition of the words ''secretary,'' ''treasurer,'' etc., to the signatures, in no way affects the individual liability of the members. This, says Judge FLETCHER, is in harmony with the weight of authority.

*J. F. Dean* for appellee.

The law is that a voluntary association is liable upon contracts made by an officer or agent, acting within the scope of his authority and a contract executed by him in his representative capacity will be deemed the obligation of the association and not his individual contract. 25 A. & E. Ency. Law. (2d Ed.), 1133 & 1134.

Whether credit is extended to the officer or to the association is a question of fact for the jury. Ib. 1141, note; see, also, 23 Am. Dec. 219.

The general rule is that the officer of an unincorporated association who contracts the debt on behalf of the association is personally liable for its payment, especially where he contracts the debts in his individual capacity or credit is given to him individually or where he exceeds his authority. When however credit is given to the association, the officer contracting the debts on its behalf is not liable. 25 A. & E. Ency. Law (2 Ed.), 1141; 23 Am. Dec. 219.

In *Pain* v. *Sample,* 27 Atl. 1107, a theatrical company made a contract with defendants, as a committee of a post of the grand army of the republic, to give a perform-

ance to raise money for the beneficial use of the post. Suit was brought against the individual members of the committee as partners (as here) upon the contract. The lower court held defendant liable. The supreme court unanimously reversed the lower court saying: "Where persons contract with a post of the G. A. R. and make their contract with them as such, they cannot maintain a suit against them as partners who make the contract. See, also, *Hitchcock* v. *Buchanan,* 26 Law Ed. (U. S.), 1078.

In this cause the proper result has been reached. Plaintiff was never entitled to recover, the cause was fairly submitted to the jury on proper instructions and the judgment should be affirmed.

STEVENS, J., delivered the opinion of the court.

(After stating the facts as above). The Civic League of Senatobia is not a corporation, and therefore could not be sued as an organic entity. The League is simply a majority of the individuals composing the organization. It follows that the officers who executed the agreement forming the basis of this suit are individually liable for the consideration agreed to be paid. There was a stagger at a showing of fraud in the procurement of the contract, but the testimony falls short of the necessary proof of fraud. While the cultured women here sued affixed their signatures to the instrument without reading over the contract in its entirety, they yet admit that the contract in its material parts speaks the agreement of the Civic League. The particular attractions called for by the contract were admittedly engaged—and engaged, too, at the prices listed. There is no controversy about the exact performances to be given or as to the price of either. The defense of appellees is bottomed upon the theory and assumption that they are not individually liable for the debts of the Civic League. This question of law has been ruled against them in *Evans* v. *Lilly & Co.,* 95 Miss. 58, 48 So. 612, 21 Ann. Cas. 1087, and authorities there referred to by

Judge FLETCHER. Appellees could have read over the instrument if they had so demanded. It is quite probable that they entered into this agreement hurriedly, without previous thought or reflection. The contract, however, must speak for itself, and, hard as it may seem to the good women involved, it speaks liability. It is immaterial that appellees did not think or believe they would be personally liable. If the individuals composing this unincorporated society are not liable, then no one could be sued for the obligation, and plaintiff would be without any remedy whatever. The jury was not instructed in accordance with the views herein expressed, and the cause must therefore be reversed and remanded.

*Reversed and remanded.*