DAVIS v. PAINTING AND DECORATING CONTRACTORS OF AMERICA et al.

No. 41672 February 13, 1961 126 So. 2d 876

*Pyles & Tucker,* Jackson, for appellant.

*Watkins & Eager, Butler, Snow, O'Mara, Stevens & Cannada, Bob Ray, Swep S. Taylor, Jr., Young, Daniel & Coker,* Jackson, for appellees.

LEE, P. J.

This is a claim by Ralph Davis against the Painting and Decorating Contractors of America, Jackson Chapter, an unincorporated association, and others for the recovery of workmen's compensation benefits. The claim was denied by the attorney referee, the Commission, and the circuit court; and the claimant has appealed to this Court.

J. E. Sherrod was a general contractor in the City of Jackson. He was not a member of the Painting and Decorating Contractors of America, Jackson Chapter, was not a party to any contract with the Brotherhood of Painters, Decorators and Paper Hangers of America, Local Union No. 1192, Jackson, Mississippi, or any other union contract, and was not apprised of the existence of any contract between the Chapter and the Union. He was the prime contractor for certain work to be done at 457 Ridgeway Street in the City of Jackson, and he made a contract with J. C. Benson to do the painting at a fixed price.

Ralph Davis was a painter by trade. In search for employment, he called J. C. Benson over the telephone, prior to July 28, 1958, and Benson agreed to give him a job. On the morning of July 28, 1958, as he, Benson, and Leo King were preparing to paint the gable of the house, the ladder and scaffold, on which Davis was working, fell. He was thrown to the ground, a distance of twelve to fifteen feet, and sustained a serious and painful injury to his back.

While Davis had not been paid for the time that he worked on the day of his injury, he admitted that he had

worked for Benson on other occasions, and for the work done at those times, he was paid by Benson; and that he expected Benson to pay him for the work on this occasion. At no time had he ever received payment of any kind from the Painting and Decorating Contractors of America, Jackson Chapter.

Davis admitted that Benson told him what to do and supervised him in his work; and that the ladder on which he was working belonged to Benson. He said he knew that all of the defendants, except Sherrod, were members of the Painting and Decorating Contractors of America, Jackson Chapter, but admitted that he did not expect any one of them, except Benson, to pay him for his work; and that he was working for Benson and that none of the other defendants maintained any supervision over him.

There was the following stipulation and agreement of fact between the claimant and the defendants in substance to-wit: There is a national association called the Painting and Decorating Contractors of America, and that there is a Jackson Chapter of this organization. The individuals named in claimant's pleading, except Mr. Sherrod, are members of that association. In the spring of 1958, the association appointed a committee to negotiate a form contract with the Brotherhood of Painters, Decorators, and Paper Hangers of America, Local Union No. 1192. A copy of the contract form was introduced in evdience. The named committee was acting as bargaining agent for the painting and other decorating contractors. The contract was not signed by the Painting and Decorating Contractors of America, but was executed as individual contracts by the members named in the claimant's pleading, but was not signed by certain other contractors belonging to the association. The same contract was subsequently signed by other painting and decorating contractors in the Jackson area who were not members of the Painting and Decorating Contractors of Amer-

ica. Each member of that association carries his own payrolls and own social security numbers with the Federal Government for the purpose of withholding social security and income tax. The members compete against each other for painting and decorating contracts. The association met informally once each month at Primos Restaurant on North State Street but kept no minutes. It did not engage in any business for profit. It simply received dues from its members. At the meetings each member paid for his own meal. Dues were used to cover letterhead and other incidental expenses with a part thereof being sent to the national chapter. Each member of the association, who felt that he was required to do so, carried his own workmen's compensation insurance.

The Painting and Decorating Contractors of America is a voluntary, unincorporated association, had no employees as such, maintained no office, and engaged in no painting and decorating work under contract as an association. The individual members do engage in obtaining contracts for painting and decorating in competition with each other and other contractors not members of the association, but who have individually signed the contract. There is no contract having more than one individual signature upon it. There is no contract purported to have been signed by the Painting and Decorating Contractors of America. Each contract was signed individually by such contractors as saw fit to do so. All contracts signed individually, whether by members of the association or outside contractors, contained the identical wording and were identical with the contract which was introduced in evidence.

The appellant poses a number of questions; but, in their final analysis, they amount to this: By reason of the agreement entered into by and between the Painting and Decorating Contractors of America, Jackson Chapter, designated ''the contractor or employer'', and the

Brotherhood of Painters, Decorators and Paper Hangers of America, Local Union No. 1192, Jackson, Mississippi, designated "the union or employees", both the Jackson Chapter, and the defendants, other than Sherrod, were his special employers, and that he is entitled, on that account, to receive workmen's compensation benefits from the individual defendants and their insurers.

Section 1, Article 11 of that contract provides as follows: *"For all employees covered by this agreement the Employer shall carry Workmen's Compensation Insurance* with a company authorized to do business in the State of Mississippi, Social Security, Unemployment Compensation Insurance coverage, and such other protective insurance that may be required by the laws of this State and shall furnish copies of these certificates and account numbers to the Union." (Emphasis supplied.)

■■■ Obviously the Jackson Chapter of the Painting and Decorating Contractors of America has no liability for workmen's compensation benefits in this matter even though it is designated, in the agreement, as the "contractor or employer." In the first place, it is agreed that the organization did not execute the agreement. In the second place, by the very terms of Sec. 6998-03, Code of 1942, Rec., "all non-profit charitable, fraternal, cultural or religious corporations or associations" are expressly excluded from the provisions of the act. Webster's New International Dictionary, Second Edition, defines a fraternal society, association or order as follows: "A society organized for the pursuit of some common object by working together in brotherly union; specif., a benefit society organized with a representative form of government, and not carried on for profit, and, often, consisting of members of the same trade or occupation or allied ones."

Undoubtedly the Jackson Chapter of this association, under the stipulation or agreement as to facts, is a fra-

ternal association within the purview of the Workmen's Compensation Act, and is therefore excluded from the provisions of that Act. Besides it does not appear that the Chapter ever came within the Act, as it was privileged so to do, in the manner and form as set out in the above section.

██ ■ Davis sought employment from J. C. Benson. He was put to work on a job under contract by Benson. The ladder and scaffold from which he fell were Benson's property. He had worked for Benson on other occasions for which he had been paid wages. He expected Benson and no one else to pay him for his work on this job. Benson told him what to do and supervised him. In other words he was controlled by Benson. Beyond doubt he was Benson's employee at the time of his accident. Mitchell v. Eagle Motor Lines, Inc., 228 Miss. 214, 87 So. 2d 466; Express Co., Inc. v. Diggs, 174 Miss. 650, 165 So. 292; Texas Co. v. Mills, 171 Miss. 231, 156 So. 866; Isaacs v. Prince & Wilds, 133 Miss. 195, 97 So. 558.

 In regard to general and special employers, this Court has held that, even though an employee may have a general employer, still a special employer, in whose service the employee is engaged at the time of his injury, is liable for such tortious injury. Sawmill Construction Co. v. Bright, 116 Miss. 491, 77 So. 316; Texas Co. v. Mills, supra; Mitchell v. Eagle Motor Lines, Inc., supra; Runnels v. Burdine, 234 Miss. 272, 106 So. 2d 49.

 The agreement, which was signed by the defendants, declared the Union was to be recognized as the bargaining agent for the painters, etc., and the Jackson Chapter for the decorating contractors. This single-spaced, type-written agreement consisted of seven pages. It went into great detail concerning working conditions, hours, wages, standards, non-discrimination, arbitration, and other incidental conditions too numerous to mention. Section 1 of Article 4 thereof provided: ''In order to economically and efficiently serve the building

public it is important to have experienced skilled workmen. The Contractor recognizes that the Union is a source of such skilled manpower, and will, therefore, use it as a source when in need of employees. *The Union agrees that when the Contractor requests employees, it will exert every effort to supply skilled qualified, experienced workers insofar as they are available* on a nondiscriminatory basis to be considered by the Contractor in filling of such positions. *The Contractor agrees to notify the Union of his need for workmen.* If, after the Contractor has placed an order for men with Union in writing and the Union has failed to supply competent men within 24 hours of such written request, *the Contractor is free to solicit men from other sources* such as he may choose, providing men he hires shall be the same skill as other skilled employees employed.'' (Emphasis supplied.) See also Section 2 of Article 4 thereof as follows: ''It is agreed that the *Contractor shall be under no obligation to hire any job applicant unless such applicant is the most qualified person* applying for the job. The Union agrees that *the Contractor shall be the sole judge* of the applicants qualifications.'' (Emphasis supplied.)

When the two sections, just quoted above, are considered, it is manifest that the contractor was to determine whether an applicant for a job would be accepted. No employee was hired at the time of the execution of the agreement, nor was there any agreement to hire any particular employee in the future. Thus no employer-employee relationship came into existence at the time of the execution of the agreement. See 31 Am. Jur., Labor, Sec. 102, pp. 469 and 470 as follows: ''Collective bargaining agreements *do not ordinarily establish the relationship of employer and employee,* but merely govern the terms of the relationship with whomever it may be established. *A collective agreement establishes no concrete contract between the employer and any employee,*

but is only an agreement as to terms on which contracts of employment may be satisfactorily made and carried out. A contract fixing wages and conditions of service for a specified period of time does not operate to fix the term of service of the employees." (Emphasis supplied.) See also Rentschler v. Missouri Pacific R. Co., 95 A. L. R. 1, a Nebraska case, where it was said: "In itself, the collective contract is rarely subject to a court action because it is incomplete. It establishes no concrete contract between the employer and any employee. No one is bound thereby to serve, and the employer is not bound to hire any particular person. It is only an agreement as to terms on which contracts of employment may be satisfactorily made and carried out. It is a mutual general offer, to be closed by specific acceptance. When negotiated by representatives of an organization, it is called collective bargaining, but ordinarily the laws of the order do not require the members to serve under it, but only that if they serve they will do so according to its terms."

 Since the Jackson Chapter was not in fact the "contractor or employer", the words of the agreement to the contrary notwithstanding, but was executed by the several defendants, other than Sherrod, the only sensible interpretation of Sec. 1, Article 11, set out above, is that the several individual defendants, so executing the contract, were agreeing in principle to cover their own employees with workmen's compensation insurance, but were not contracting to cover employees in the service of other contractors.

Such a conclusion in no way conflicts with Evans v. Lilly and Co., 95 Miss. 58, 48 So. 612 or Alkahest Lyceum System v. Featherstone, 113 Miss. 226, 74 So. 151, cited by the appellant. In those cases certain officers of mere unincorporated associations signed and executed promissory notes by which they bound themselves to pay money for good and valuable considerations. The abbreviations

of the title of their offices followed their names. Those cases held that the signers in those instances were individually liable on those obligations but, as stated above, the bargaining agreement, at the time of its execution, constituted no enforceable contract to hire any particular person.

It appeared that J. C. Benson had less than eight employees in his service. Hence he was not subject to the Workmen's Compensation Act. Sec. 6998-03, supra.

It therefore follows that the order of the Commission, which declined to award benefits against the defendants and their insurers, must therefore be affirmed.

Affirmed.

*Arrington, Ethridge, McElroy* and *Rodgers, JJ.,* concur.