FORD ET AL. v. LOOMIS ET AL.

1. **Injunction**: DAMAGES ON BOND: ATTORNEY'S FEES TO DEFENDANT. It may be regarded as the settled rule of this state that an attorney's fee is allowable to the defendant where an injunction is dissolved upon motion, or where it is dissolved upon the final hearing, when the injunction is the only relief sought; but where a motion is made to dissolve an injunction as a whole, and not merely for a modification of it, where a modification is all that the defendant is entitled to, and all that he secures, he cannot, in an action on the injunction bond, recover all the fees paid his attorney for services in relation to such motion. Whether a part of such fees could be recovered is a question not arising in this case.

2. ——: ——: FACTS NOT WARRANTING. Where the injunction defendant, anticipating an injunction, made extraordinary efforts and accomplished the object sought to be enjoined before the writ was served, he cannot claim that he was delayed by the injunction, and recover damages for such delay.

*Appeal from Delaware Circuit Court.*

WEDNESDAY, JUNE 13.

THE defendant, Loomis, obtained an injunction against the plaintiffs, J. W. Ford and Geo. Ford. Afterward the action was dismissed by him. This action is brought upon the injunction bond to recover for damages alleged to have been sustained by reason of the injunction, and also for attorney's fees alleged to have been paid. There was a trial to the court, and judgment was rendered for the plaintiffs. The defendants appeal.

*A. S. Blair*, for appellants.

*Bronson & Leroy* and *E. M. Carr*, for appellees.

ADAMS, J.—The controversy out of which the injunction suit grew arose in respect to a partition wall. The plaintiffs are the owners of a certain lot in the city of Manchester, and the defendant, Loomis, is the owner of the lot adjacent there-

to on the south. Loomis improved his lot several years ago by the erection of a building, the first story of which is owned and occupied by him, and the second story is owned and occupied by the city as a town hall. The wall in question was built by Loomis, one-half upon his own lot, and one-half upon the Ford lot, then owned by one Tate. Half of the cost of the wall was paid by Tate. In 1881, the plaintiffs, having purchased of Tate, erected a stone building two stories high, each story being somewhat higher than the corresponding story of the Loomis building. In erecting their building, they joined on to the partition wall in question. In joining on, they commenced making changes in the front of the wall. They cut into it and removed alternate bricks, and inserted cut stone extending part way across. Loomis regarded this change as an injury to the appearance of the wall, and an infringement upon his rights, and so notified the Fords, and asked them to desist from changing the style of architecture. They did not desist, but, apprehending an injunction, pushed forward their work by working extra hours. Their aim was to get their front wall constructed above Loomis' story before he could enjoin them. Seeing that they could not succeed in getting the whole of their front wall thus constructed, they neglected a part of it, and devoted themselves to that part next to Loomis. Whether they succeeded, before the injunction was served, in getting their wall next to him higher than his story, is a question upon which the parties are not agreed, but is one upon which the appellants claim that there is a conflict of evidence. After the injunction was served, the appellees delayed a little in some portion of their work. They completed their front wall, however, in a short time, and did not, so far as the evidence shows, make any change in their plans. They did shorten a galvanized iron cornice which was put over the first story, but it was left long enough to extend to the middle of the partition wall, and, according to the testimony of the plaintiffs, which is undisputed, they shortened

it to correct a mistake and make it conform to the original plan. The appellees proceeded to the completion of their building before the case could be tried, and, at the first term of court, Loomis dismissed his action. This action was then brought by the appellees on the injunction bond, and a recovery was allowed in the sum of $132, to-wit, $70 as attorney's fees, $50 for delay in mason work, and $12 for rental value of building during time of delay.

The appellants insist that the undisputed evidence shows that the appellees were not in fact delayed, and were in no way injuriously affected by the injunction, and farther, that, as the injunction was not dissolved on motion, nor upon a hearing upon the merits, the appellees are not entitled to attorney's fees.

Whatever conflict of authority there may have been, it may now be regarded as the settled rule, especially in this state, that an attorney's fee is allowable where an injunction is dissolved on motion. *Behrens v. McKenzie*, 23 Iowa, 341; *Corcoran v. Judson*, 24 N. Y., 106; *Edwards v. Bodine*, 11 Paige, 223. So, too, it is allowable if the injunction is dissolved on final hearing, if the injunction is the only relief sought. *Reece v. Northway*, 58 Iowa, 187. Possibly it should be allowed in some cases where the injunction is not dissolved, either on motion or final hearing, as where the plaintiff in the injunction suit wrongfully enjoins the defendant for a time, and the latter employs an attorney who renders services, and afterward, and before there is any determination, the action upon the plaintiff's own motion is dismissed. But in this case the appellants contend that the injunction, so far as any question before the court is concerned, proved to be abortive, the appellees having rendered it so by their diligence in consummating the acts sought to be prevented, before the writ could be served. To determine whether this is so, we must look into the writ, and see what acts it purports to enjoin, and then into the evidence, to see whether those acts had already been done. The acts which

the writ purports to enjoin are the "injuring, defacing, mar
ring, or changing the style of architecture of any portion of
the front wall of the store building of said L. A. Loomis,
* * * by removing any portion of the wall of said build
ing and inserting in lieu thereof cut stones, or other material,
differing from the original material of the walls of said
building, or making in the walls of said building projections,
cornices, or other architectural work, changing the original
character of the same." Loomis' store was one story high, and
the acts sought to be enjoined pertained to the partition wall
one story high, and to the cornice designed to go over the
appellees' first story. Now, how much of this had been done
when the writ was first served? The cornice had not been
put on, but it appears to us that the other acts sought to be
enjoined had been done. That part against Loomis was built
up in the exercise of extroadinary diligence, and in advance
of the other parts. The foreman of the appellees' work, one
Trenchard, testified as follows: "When Ford brothers under-
stood that Mr. Loomis was to serve an injunction on them,
they got me up, and got my force out, and got the wall above
Loomis' store, and laid the brick there in the night before
the injunction was served. They got it laid some three or
four courses above the city hall floor, and above Loomis'
part. The brick was laid up on the corners as far as it
touched Loomis' building. The balance of the front wall
was left open. But so far as it touched Loomis' building it
was run up above his building. It was above the town hall
floor. We were out before daylight in order to get the
masons at work. I heard the Fords say, when they heard
the train coming in, they had got out of the way of Loomis'
injunction." As to the height of the work, he is corrobo-
rated by Loomis and another witness, and disputed by no
one, not even by the plaintiffs, although one of them was
upon the stand and was examined as a witness in their behalf.
The only pretense of any conflict arises upon the testimony
of one Ehlers. He testified as follows: "When the injunc-

tion was served, we did not have the wall built quite up to the second story. I know it was not very far from it. The first story brick was not up, to my knowledge. I won't swear that the brick next to Loomis' wall was not clear up to town hall." This testimony is in no way in conflict with that of Trenchard and the others, but harmonizes with it. The first story front wall was not up as a whole, but only that part next to Loomis. All the change or defacement, then, so far as the mason work was concerned, had been made. The only change or defacement not made, and still apprehended by Loomis, was from the cornice which had been made to go over the first story. The undisputed fact about that is that it was too long by three inches, and would, if it could have been put up as it was, have extended three inches over Loomis' store. It had been made by mistake longer than the plan. One witness says: "It hit the projecting brick; it wouldn't fit the work some way." It was accordingly shortened, and that appears to have been required by the necessity of the case, though that necessity appears not to have been fully understood by Loomis. We come, then, to the question as to whether the judgment, or any part of it, in favor of the appellees can be sustained by reason of anything pertaining to this cornice. The appellees contend that the part allowed for attorney's fees can. Their position is based upon a fact which remains to be stated. They moved to dissolve the injunction, and a hearing was had upon the motion. The court overruled the motion, but made what it called a modification of the injunction, the order respecting it being in these words: "This injunction is so far modified as to permit the defendants' putting up a metal cornice on the first story, corresponding with the original plans and specifications, not extending beyond the center of the partition walls of said building." The appellees base their right to an attorney's fee, in part, at least, upon this so-called modification. Their position, if we understand it, is that this was a partial dissolution obtained as the result of

their motion, and hence they should be allowed the cost of making the motion.

We have some doubt whether the appellees were ever enjoined from putting up a cornice that should extend to the middle line of the partition wall. We discover nothing in the petition in the injunction case, and nothing in the evidence in this case, tending to show that Loomis ever had any objection to the appellees extending their cornice to such line. And when we look into the writ, it is by no means clear that it should be held to enjoin the appellees from doing so. They were enjoined from putting up a cornice that would deface or change the original style of architecture of the front wall of Loomis' store. Now they were not enjoined from extending the cornice to the middle line of the wall, unless extending it to such line would have the effect to deface or change the original character of the architecture of the wall. But whether it would have this effect we do not feel called upon to determine. If we should concede that it would, we should still be of the opinion that the appellees would not be entitled to recover for attorney's fees. The petition for the injunction is entirely silent in regard to the cornice. We have a case, then, where the writ is broader than the petition. In such a case we concede that the writ must be obeyed, even in that wherein it is broader than the petition. But the defendant in such case has a very simple remedy. His remedy is not by motion for dissolution, but for modification. *Richards v. West*, 3 N. J. Eq., 456; *Park v. Yorks*, 32 Howard, (N. Y.) Pr., 408. Such motion is to be determined by simple comparison of the writ and the petition. Now the appellees' motion was not a motion for modification. It did not contemplate a modification, but a complete dissolution. The attorney's services were rendered for that end, which was not reached. We think that there is no rule which would justify us in holding that the appellants became liable for the entire cost of such services. Whether there could have been an apportionment we need not determine. There was no attempt to make it.

If we should look at the modification as a partial dissolution, we should meet with substantially the same difficulty. There is, doubtless, a liability which may arise upon a partial dissolution. A liability was sustained in *White v. Clay's Ex'rs*, 7 Leigh, 68, which was a case of partial dissolution. But the liability was not for attorney's fees. It was of an entirely different character. The collection of a judgment was enjoined, and afterward the injunction was dissolved as to a part. It was held, and very properly, that the injunction bond given to secure the payment of the judgment could be inforced to the extent to which the injunction was dissolved.

Probably there might be a case where even attorney's fees would be allowable in case of partial dissolution, as where the motion should be for partial dissolution, and should be sustained as made. But it would not follow that, where a motion is made to dissolve the injunction as an entirety, and is only partially sustained, the plaintiff in the injunction suit would become liable for all the legal services rendered for the defendant upon the motion. We have to say, then, that the judgment rendered in favor of the appellees for $70, as attorney's fees for services rendered upon the motion as a whole, cannot, we think, be sustained.

We have already seen that the injunction was served too late to prevent any mason work, and did not, therefore, delay the completion of the building. It follows, therefore, that the judgment for $50 for delay on mason work, and $12 for rental value of building, cannot be sustained.

REVERSED.

### SUPPLEMENTAL OPINION.

ADAMS, J.—In a petition for a rehearing, our attention is called to the fact that Loomis' ownership embraced the second as well as the first story. We spoke of it as embracing only the first story. But the point has no materiality, and, having none, the obscure evidence concerning it was not carefully ex-

amined. The material fact is that the plaintiffs had built above Loomis' *part*; and that is equally true, though it embraced the second story. Of the evidence upon this point we made a very careful examination, and found that there was no conflict. It is true that, by reason of a clerical error, we said that the appellants contend that there is a conflict. We intended to say, and did say in the original draft, from which a copy was made for filing, that the appellants contend that there is no conflict.

The petition for rehearing discloses nothing, we think, which should change our view of the case. It must, therefore, be overruled.