VICTOR *et al.* v. ADAMS.*

[106 So. 433.  No. 25132.]

(Division A. Nov. 9, 1925.  Suggestion of Error Overruled Jan. 4, 1926.)

1. SALES. *Finding of sale to association through committee held sustained by evidence.*

Evidence *held* to sustain a finding of sale to an association through a committee representing it.

2. ASSOCIATIONS. *Committee, contracting for association incapable of contracting, individually liable.*

   Individuals who, as committee for an association incapable of contracting, make a contract of purchase for it thereby render contractors individually liable.

3. FRAUDS, STATUTE OF. *Contract of committee for association unable to contract, making committeeman liable, not required to be in writing.*

   As contract of committee for association incapable of contracting makes the committeemen individually liable, it need not be in writing, as one to pay the debts of another.

4. COSTS. *Unsuccessful defendants not to be charged with costs of bringing successful defendants into court.*

   Costs incurred in issuing and serving process on the successful defendants may not be taxed against the unsuccessful defendants.

---

*Headnotes 1. Sales, 35 Cyc., p. 572; 2. Associations, 5 C. J., Section 61; Liability of Committee contracting in name of association, see 25 R. C. L. 65; 3 R. C. L. Supp. 1401; 3. Frauds, Statute of, 27 C. J., Section 15; 4. Costs, 15 C. J., Section 230 (Anno).

APPEAL from chancery court of Jackson county. Hon. V. A. GRIFFITH, Chancellor.

Suit by P. H. Adams against C. A. Victor, J. S. Delmas, and others. From a decree for complainant, the named defendants appeal. Affirmed in part, and reversed in part.

*White & Ford,* for appellants.

I. *Liability against the two appellants here was based by the trial court on the fact that they served as a committee of the association in arranging for the purchase of the hampers in question.* Adams admitted that Victor's statement was *substantially correct.* Outside of any other question in the case, we respectfully submit that the court should reverse the finding of the chancellor on this issue, because the proof is all one way.

II. *The next point we advance is that appellants, as a matter of law, would not be liable for the purchase of the hampers under the circumstances detailed by the wit-*

*nesses, even though Adams, as a matter of fact, did sell the merchandise to the association, and even though appellants had bought the merchandise for the association.* There are only two possible views to be taken of the matter; namely, first, the committee composed of appellants either arranged with Adams for the merchandise for the benefit of the members, to be paid for by them; or, second, the committee bought the merchandise for the association.

Taking the case most favorably to appellants, the most that could be said against them would be that they were authorized as a committee of the association to obtain hampers. They went to Long Beach and bought the hampers for the association on a deferred payment basis. Would they be personally liable then for the goods so bought? We have not been able to find any authority holding that they would be so liable. On the contrary, the law is the other way. *Whitehead & Hoag Co.* v. *Donovan,* 210 Ill. App. 268; *Little Rock Furniture Co.* v. *Kavanaugh,* 111 Ark. 575, 164 S. W. 289, Ann. Cases 1916-A 848; *Owens* v. *Hadley,* 186 Mo. App. 1, 171 S. W. 973.

We are not unmindful of the general rule that where officers of an unincorporated non-trading organization contract within the scope of their authority for something to be done, such officers might be liable on the principle of agency; yet it is the law, as stated by the above and other cases, that where the party furnishing supplies to such an organization knows the condition and is aware that there are no funds available and he looks to the association for payment, the representatives of the association who acted in its behalf are not personally liable. Taking the case most strongly for the appellee, he is not entitled to recover under the authorities; and taking the case as made by appellants' witnesses, he was not entitled to recover on the facts.

III. *Appellants are not liable under the statute of frauds.* It is undisputed that the arrangement for these hampers was verbal, and no writing was signed at any time by the association or appellants. It is not shown

that appellants received these hampers or had anything whatever to do with them after they were shipped. Furthermore, it is not shown that they were connected in any manner with the hampers shipped before that time or after that time. We advance the contention, therefore, that under the statute of frauds, appellants could not possibly be liable for this account or any part of it, because the sale, if it were a sale, was oral, no part of the purchase money was paid, and the goods were not received by appellants, nor by any one authorized by them to receive said goods. The court will remember that Hayes was the joint agent of Adams and the association, each paying one-half his salary. When he received the carload of hampers sent in the name of Adams and receipted for it in the name of Adams, he manifestly received them for Adams and not for appellants. It was in testimony that Mr. Hayes was to handle the hamper matter for Mr. Adams. The case is entirely unlike, therefore, a case where an agent for an association signed his name individually to a writing in behalf of some association of which he was a member or for which he was authorized to act. Under the statute of frauds they are not liable.

*Ross & Backstrom,* for appellees.

I. Counsel for appellants argue that this court should reverse this case on the finding of fact by the chancellor. The rule is hoary with age that this court will not disturb a finding of fact by the chancellor if there be credible testimony in the record upon which the finding can be based. The testimony, upon which the chancellor based his finding in this case, is clearly, forcefully and eloquently discussed, analyzed and set forth in his opinion.

II. The next contention of the appellants is that even though the appellants did go to Long Beach, Mississippi, and bought the hampers for the Pascagoula Truck Growers Association, they were not personally liable for payment therefor. Upon this proposition this court has

twice spoken and each time it has spoken liability. *Evans v. M. C. Lilly & Co.,* 48 So. 612; *Alkahest Lyceum System v. Featherstone,* 74 So. 151. The overwhelming weight of the testimony in this case, and the chancellor so found, is that the appellants here went to the appellee's place of business at Long Beach, as a committee from the Pascagoula Truck Growers Association and there bought the hampers in question on credit, which hampers were delivered, and we respectfully submit that under the Alkahest case and the *Evans case, supra,* there was no other decision which could be rendered by the court below. The cases have settled the decisive point in this case, and we submit that there is no other decision that this court can make than an affirmance of the decree of the court below.

III. We now come to the proposition of the appellants that they are not liable under the statute of frauds. This argument seems to proceed upon the theory that the hampers were never delivered to the Pascagoula Association, but were delivered to the appellee's agent, Hayes, at Pascagoula. The facts in the case sufficiently answer this contention. Furthermore, the statute of frauds was neither pleaded nor raised in any other manner in the court below, and is raised for the first time in this court. The statute of frauds defense, as all other defenses, must be pleaded or otherwise properly raised in the court below to be effective in this court.

As to the taxation of the costs, the law provides that the successful litigant recovers his cost always, and there is no exception to the rule of which we have ever heard except in the matter of a cloud of witnesses. At any rate, this court is not the right forum to raise such a question. If appellants were aggrieved at the taxation of the costs in the court below; that court was the proper forum in which to raise the question. The record discloses the fact that this question was not raised.

*White & Ford,* in reply for appellants.

Counsel for appellee place their entire reliance for affirmance on *Evans* v. *Lilly,* 95 Miss. 48, and *Alkahest Lyceum System* v. *Featherstone,* 74 So. 151. These cases, we submit, are wholly off the point. The Alkahest case shows that when the matter of signing the entertainment contract came up, two officers of the association signed it personally, without calling to the attention of the other contracting party that they were acting for the Civic League, or that the Civic League had no funds, nor was it shown who was to be responsible for the performance of the contract entered into by the officers of the League. The case, therefore, is entirely different from that presented herein, where appellee, Adams, admits that the committee told him that the association had no funds, that the hampers were to be used by individual members of the association, no terms of payment were fixed, and, furthermore, appellee, Adams, himself was a party to the contract, which was to provide money with which to pay for this merchandise, in that he, as an expert, was to market the produce of the members. Moreover, in the Alkahest case there was a written contract signed by the two ladies, whereby they unequivocally undertook to do certain things. In the Lilly case certain officers of an association signed promissory notes, which, of course, definitely agreed to pay a certain sum, at a time named. There was, therefore, a written contract, evidencing the liability of the maker. There was no reservation; the promise was unequivocal and in writing. It will be appreciated, therefore, that in both of these cases which are said to constitute authority against us, that here was a definite agreement in writing to pay and perform in a certain amount. In the case presented by this record, the liability sought to be imposed on appellants is one that must be implied from facts and circumstances and not from any express undertaking or obligation. The cases, therefore, are wholly different.

In our original brief we cited three cases squarely in

point, we think, holding that committees of a voluntary association are not liable under circumstances like these. 25 R. C. L., page 65, sec. 21, states the general rule. See also *Little Rock Furniture Co.* v. *Kavanaugh,* 111 Ark. 575, Anno. Cases 1916 A. 848. The other two cases are *Cheeney* v. *Clark,* 3 Ver. 431, 23 Am. Dec. 219, and *Whitfor* v. *Laidler,* 94 N. Y. 145, 46 Am. Rep. 131.

Counsel next discuss the assignment of error relative to the erroneous taxation of cost. After reading the argument carefully, we fail to find anything to justify the court in imposing on appellants the cost of serving about one hundred defendants in the case, as to whom the bill was dismissed. This point was raised in the court below, and the court erroneously taxed appellants with all the costs. Either the case should be reversed on this point, or, if counsel's contention is that the costs were not imposed on appellants, this court should make it clear in its decision that appellants in no event are liable for these costs.

McGOWEN, J., delivered the opinion of the court.

Adams, the appellee, exhibited his bill in the chancery court of Jackson county against the Pascagoula Produce Association as a copartnership, and against more than fifty defendants, including the two appellants here, alleging that these persons composed an organization created among themselves for the purpose of buying and selling farm produce for profit, and for the purpose of purchasing seed and containers for shipment of produce. The complainant alleged that he was in the mercantile business at Long Beach, and delivered to the Pascagoula Produce Association on the order of its representatives certain articles of merchandise, the main feature of which were hampers, containers for the shipment of produce, and alleged a balance due thereon to the amount of one thousand twenty dollars and sixty cents. He further alleged that he could not obtain a list of the members

of the copartnership, but that each and all of them having obtained these items were liable collectively and individually for the whole of this indebtedness to him, and prayed a judgment against the association and each and every member for the entire amount of the indebtedness.

Demurrer was filed and withdrawn by the defendants, and Delmas and Victor, together with about a dozen other defendants, filed their separate answers as members of said association. They denied that the organization was formed for the purpose of purchasing farm produce or the seed or containers for profit. They denied owing anything for seed; and denied that they owed any part of the account sued on; denied that hampers were received or accepted by the association as such; denied that the association sold the same or any part at a profit; asserted in effect that Adams had shipped a carload of the hampers to his own agent at Pascagoula, and that his agent had sold the hampers to individuals. They denied any necessity for an accounting, and set up that the association is an agricultural association formed by parties in the county in the truck growing business, for the purpose of providing a co-operative organization; that it owned no property; had no income; engaged in no business. They further set up that an initiation fee was charged; that the association had no officer who drew a salary; that the only paid employee of said association was one E. G. Hays, who was jointly hired by the association and the complainant; that the association had a written contract with Adams, the complainant, by which the complainant was to handle and sell all the vegetables produced in Jackson county for a commission of fifteen per cent. on the gross sales; named about a dozen parties who were members of the association; and denied that the other parties defendant were members of the association.

They further alleged that the hampers were shipped by the complainant to Pascagoula with a distinct agree-

ment that the same might be used by the vegetable grow-- ers who desired to ship through this association, the hampers to be distributed by Hays, the agent of Adams, and that theretofore it had been the custom of Adams to take from the proceeds of sale his charges for hampers, etc. They charged certain negligence on the part of Adams, which we do not think it necessary to recount here. They named many men who were members of the association and who were not sued or served with process. They made this answer a cross-bill, and prayed for a decree over ogainst Adams for the sum of three hundred fifty-four dollars and seventy-two cents.

Adams answered the cross-bill; denied the negligence and liability set out in the cross-bill as against him; set up specifically that a number of hampers were sold by the association to divers persons without consultation with him; denied all of the allegations of negligence or any indebtedness; and set up that Hays was not a joint employee, but was representing him only in the matter of proper packing and supervision of the packing of the association's products.

Proof was taken, and the chancellor held that Delmas and Victor, two of the three members of the committee appointed by the association to secure hampers, bought the hampers to be shipped by him, charged to the account of the association, and when the association was in funds it was to pay for same. In other words, the chancellor held that the agreement verbally entered into by those two committeemen and the members of the association was a sale on credit.

Pate, the county demonstration agent, was present at this interview, and insisted that much dissatisfaction would ensue if Adams took pay for the hampers from the proceeds of the sale of the products, but stated that Adams agreed to ship the hampers and look to the individual members for pay therefor.

After this agreement was entered into, the minutes of the association show that it was approved by the as-

sociation, and the price paid for the hampers singly was sixteen cents, and they immediately ordered that a profit of one and two cents should be put upon the price of a hamper delivered out to its members. The records show that many members of the association dealt with it and settled with it as to the hampers. In other words, while they contended that it was an individual matter between each individual member of the association and Adams, they did not so act, and the complainant's testimony was to the effect that it was a sale negotiated by these two defendants to the association on credit.

Much proof was taken, and the chancellor, found that the Pascagoula Produce Association was not a copartnership nor a corporation, nor such legal entity as to be liable as such association to a decree for the indebtedness; but did hold that Delmas and Victor were individually liable for the sum sued for, one thousand twenty dollars and sixty cents, less certain offsets allowed, which taken from that sum left a balance of six hundred fifty-three dollars and fifty cents, for which he entered a decree in favor of the complainant against these two defendants.

Appellant contends, first, that the chancellor erred in holding that there was a contract of sale through the committeemen to the association, and contends that on the proof adduced that complainant failed to show a sale to the association.

This is a voluminous record, and we cannot set out the testimony in this opinion, but content ourselves by saying that there was a sharp issue of facts between the complainant and these committeemen, and especially Pate, as to what was said when the hampers were ordered to be shipped. Adams finally testified positively as above indicated, and in accordance with the chancellor's finding, and all of the testimony shows clearly that the association handled the hampers as their own by entering on its minutes that they would be sold to the members and to individuals at a profit, by receiving and claiming settlements, so that we cannot find satisfactory testi-

mony upon which to reverse the chancellor upon his find-. ing of fact. Adams did say, however, that Victor's statement was substantially correct, with the added statement that he sold on credit to the association.

Appellant contends that these goods were ordered in the name of a voluntary association, and that this committee cannot be held individually liable; and, even if what they said and did in this transaction constituted a contract, that they cannot be held for the reason that the contract is verbal; that there is no writing signed by Delmas and Victor; and that therefore they are relieved from liability under the statute of frauds.

On the first proposition counsel cite *Whitehead & Hoag Co.* v. *Donovan,* 210 Ill. App. 268 and *Little Rock Furniture Co.* v. *Kavanaugh,* 111 Ark. 575, 164 S. W. 289, 51 L. R. A. (N. S.) 406, Ann. Cas. 1916A, 848, which cases are cited in Ruling Case Law, but in our opinion are not in point here. Especially is this true as to the Arkansas case cited.

Whatever contract was entered into, and whatever liability was created, was initiated, carried on, and completed by these two defendants. It is true that no note or written agreement was signed by them, but they made as binding a contract for themselves and for their association as could be made verbally; and, as we have already stated, the chancellor found that they obligated themselves personally, with their associates, and did not undertake in their conversation, as we read this record, to limit their liability. If we then say that they made a contract for themselves and their associates, is there any difference between the signing of the notes and an agreement to pay the amount? Of course, where there is a written agreement signed, there is no difficulty in determining the facts of the agreement; but the agreement being once established, the same rule of law would apply.

The committee, having agreed to bind themselves and their associates, are subject to the rule of law announced

in *Evans* v. *Lilly,* 95 Miss. 58, 48 So. 612, 21 Ann. Cas. 1087, and in the case of *Alkahest Lyceum System* v. *Featherstone,* 113 Miss. 226, 74 So. 151, in which latter case the court said.

"The civic league of Senatobia is not a corporation, and therefore could not be sued as an organic entity. The league is simply a majority of the individuals composing the organization. It follows that the officers who executed the agreement forming the basis of this suit are individually liable for the consideration agreed to be paid. . . . The defense of appellees is bottomed upon the theory and assumption that they are not individually liable for the debts of the civic league. This question of law has been ruled against them in *Evans* v. *Lilly & Co.,* 95 Miss. 58, 48 So. 612, 21 Ann. Cas. 1087, and authorities there referred to by Judge FLETCHER."

In each of these cases above cited the members of the voluntary association making a contract for an organization incapacitated to contract, although they set forth in the signing of the contract their agency, and undertook to sign the contract only as agents for a disclosed principal; yet, when the principal was not capacitated to make a contract, the agent so contracting by virtue of his contract thereby renders himself individually and primarily liable.

The whole rule is clearly stated in 25 R. C. L. section 21, p. 65, as follows:

"Under the rule established by many authorities, although a party may be a mere agent, and known to be such, yet if he contracts in his own name, or in his name as agent, when his principal is incapable of contracting, or is irresponsible, the law presumes that he intended to bind himself. In accordance with this rule it has often been held that persons or committees contracting in the name of an association which is unincorporated are personally liable. On the other hand, in the absence of a personal promise or covenant, one signing a con-

tract, who therein represents himself to be the agent of an association as a disclosed and known principal, or who assumes to contract for such principal only, cannot be held personally liable upon the covenants contained in such contract,'' etc.

There can be no question in this case but that the contract sued upon differs only from the cases of *Alkahest Lyceum System* v. *Featherstone,* and *Evans* v. *Lilly & Co., supra,* in that in the instant case the contract is not in writing, and in the cases *supra* the contract was in writing.

Having by their acts made themselves principals, we do not see how the statute of frauds could be invoked to relieve them of liability, as they acted for themselves as well as others with whom they were associated. They are answering for their own agreement. True, others were acted for, but, where they became primarily liable, the statute of frauds cannot be invoked, unless they became, by their verbal agreement, liable for the promise or debt of another who was in the first instance primarily liable. The distinction is that these committeemen are primarily liable under the contract for the amount of the debt in the same manner and to the same effect as if they had signed a written order as the goods were delivered to and used by them together with their fellow members.

These two defendants were the only parties dealing with Adams, there was no other principal, because the association they essayed to represent had no legal existence and whether they so intended or not they became individually liable, and we think the chancellor correctly so held.

The cause was dismissed as to numerous defendants, but the decree herein taxed these defendants with all costs, which was error in so far as the costs incurred in issuing and serving process upon defendants held not to be liable are concerned.

The judgment will be reversed only in so far as these appellants were taxed with the costs of bringing other successful defendants into court. These costs should be taxed against appellee, Adams, and to this extent the judgment will be amended here.

*Affirmed in part; reversed in part.*