## JOHNSON *et al. v.* HOWARD *et al.*

(In Banc. May 9, 1932. Suggestion of Error Overruled, June 13, 1932.)

[141 So. 573. No. 29620.]

476

Watkins, Watkins & Eager, Julia Sheldon and Louis C. Hallam, all of Jackson, and **T. J. Wills**, of Hattiesburg, for appellants.

**Brunini & Hirsch,** of Vicksburg, for appellees.

480

Wells, Jones, Wells & Lipscomb, J. Morgan Stevens and Howie & Howie, all of Jackson, and Brunini & Hirsch, of Vicksburg, for appellees.

Argued orally by **W. H. Watkins** and **L. C. Hallam**, for appellants, and by **Jno. Brunini**, for appellees.

**Anderson, J.,** delivered the opinion of the court.

This is an appeal from the chancery court of Warren county awarding appellees damages in the sum of one thousand seven hundred fifty-eight dollars and thirty-seven cents for the wrongful issuance of an injunction in a cause between the same parties styled Howard et al. v. Sheldon et al., which originated in the chancery court of Forrest county and came up to the supreme court, and an attorney's fee in the sum of seven thousand five hundred dollars for the services of the appellees' attorneys in the dissolution of the injunction in said cause. The decision of the supreme court in that cause is reported in 151 Miss. 284, 117 So. 839. The record in that case is part of the record in this case. The hearing

in the present case was on bill, answer, and proofs, resulting in a final decree for the sums above stated.

Appellants were complainants in the injunction suit in Forrest county, and appellees were the defendants therein. Appellants are members of the republican party of this state, and appellees were at the time of the suing out of the injunction and the final disposition of that cause members of the various executive committees, state, district, county, etc., of the republican party in this state.

Chapter 149 of the Code of 1930, sections 5864 to 5910, inclusive, regulates the calling and holding of all state and county conventions by political parties for the purpose of selecting executive committeemen, presidential electors, and delegates to the national party conventions. The county conventions are composed of delegates elected thereto from each supervisor's district of the county, and the state convention is composed of delegates elected by the county conventions.

Appellees, who were members of the state republican executive committee, fixed the day for the holding of the state and county conventions for the election of delegates to the state convention so that the state convention might meet early enough to select delegates to the national convention, which was to meet at Kansas City on June 12, 1928. Thereupon appellants exhibited their bill setting forth that the state executive committee had violated the primary election laws in several particulars in providing for the county and state conventions, and praying for an injunction against the holding of the conventions, and the elections at which the delegates to the county conventions were to be selected. Appellants executed an injunction bond in the sum of ten thousand dollars payable to appellees, conditioned according to law. An injunction was issued restraining appellees from proceeding with the selection of delegates to the various conventions of the state. Appellees demurred to the bill and made a motion to dissolve the temporary injunction,

both were overruled, and appellees were granted an appeal to the supreme court to settle the principles of the cause. The supreme court held (151 Miss. 284, 117 So. 839) that no jurisdiction had been conferred by statute upon the courts of this state to interfere with or regulate the holding of primary elections and conventions of political parties, and that the chancery court was without jurisdiction to enjoin the holding of party conventions and elections at which delegates to county conventions were to be selected, on the ground that the state executive committee had violated the primary election laws. The decree of the court below overruling the demurrer to the bill and declining to dissolve the injunction was reversed, and the cause remanded, the court stating in its opinion that the injunction should be dissolved. When the cause went back to the chancery court of Forrest county, a final decree was entered dismissing appellants' bill and dissolving the injunction. The bill, however, was dismissed without prejudice to appellees' claim of damages for the wrongful suing out of the injunction.

After the rendition of that decree appellees brought this suit on the injunction bond in the chancery court of Warren county against appellants and the sureties on their bond to recover the damages claimed to have been suffered by them in the way of expenses and solicitors' fees caused by the wrongful issuance of the injunction. As stated, the court awarded appellees damages in the sum of one thousand seven hundred fifty-eight dollars and thirty-seven cents claimed to have been expended by them as the result of the wrongful issuance of the injunction, and seven thousand five hundred dollars solicitors' fees incurred by them for the services of their solicitors in representing them in having the injunction dissolved.

The evidence in this case shows that appellees were violating the primary election laws of this state when they were enjoined; for that reason appellants contend

that there was no liability on the injunction bond. They state their position in this language: "The appellees had no vested right to do that which they were restrained from doing. Upon the other hand, they were enjoined from violating the law, therefore, cannot recover damages. The appellees were not damaged, in that they were only restrained from proceeding in an unlawful manner complained of in the original bill of complaint, and upon the issuance of the injunction, changed their procedure to conform to the requirements of the statutes pointed out in the original bill of complaint; and in that the injunction was nullity ab initio."

Section 417, Code of 1930, is in this language: "Where the injunction shall not be for the stay of proceedings in an action at law for the recovery of money, or upon a judgment requiring the payment of money, the party applying for the injunction shall, before the issuance of the same, enter into bond in like manner, in a sufficient penalty, to be fixed by the judge granting the same, conditioned for the payment of all damages and costs which may be awarded against him, or which the opposite party may suffer or sustain by reason of the suing out of said injunction, in case the same shall be dissolved." Section 432 of the Code of 1930 provides that damages on an injunction bond where the injunction has been dissolved *shall* be allowed where the injunction is to stay proceedings on a judgment at law for money, or to stay a sale under a deed of trust or mortgage with power of sale, and concludes with this language: "And in all cases upon the dissolution of an injunction the damages may be ascertained by the court or chancellor, or upon reference to a master, and proof, if necessary, and decree therefor be made, and execution be issued thereon." The next section, 433 of the Code of 1930, provides, among other things, that on the dissolution of an injunction the party claiming damages may do so in the cause in which the injunction was issued, or he may bring an independent suit on the injunction bond.

As we understand the decisions of our court this question has long since been determined against the appellants' contention. "The dismissal of a bill whether by the court or by the complainant operates as a dissolution of any injunction issued thereunder and *establishes the fact that it was wrongfully sued out, and that the defendant is entitled to recover whatever damages he sustained by the issuing of same.*" (Italics ours.) Griffith's Chancery Practice, section 463. We think the principle laid down by the author of that work is fully justified by the decisions of our court. Yale v. Baum, 70 Miss. 225, 11 So. 879; Somerville v. Mayes, 54 Miss. 31; Alexander v. Woods, 115 Miss. 164, 75 So. 772; Marshall v. Minter, 43 Miss. 666; Harrison v. Balfour, 5 Smedes & M. 301.

Yale v. Baum appears to be more directly in point on its facts than any of the other cases referred to. That was a case of this character. Yale and Bowling sued out an attachment against Solomon & Co. which was levied on certain goods. Baum & Co. claimed to have purchased the goods and obtained an injunction restraining the plaintiffs from subjecting them to their attachment. On the hearing of the injunction suit a decree was entered dismissing the bill "without prejudice to either party." Thereupon Yale and Bowling sued Baum & Co. and the sureties on their injunction bond to recover damages for the wrongful suing out of the injunction. The plaintiffs at the trial offered in evidence the bond and proceedings in the injunction suit, including the decree of dismissal and other evidence in support of their demand. The defendants contended that, inasmuch as the decree of dismissal was without prejudice, they were not precluded from showing that the goods were not liable to plaintiffs' attachment, and therefore there was no liability on the injunction bond. In other words, the defendants offered to show that the goods belonged to them and were not subject to the attachment. Although not set out in the statement of the case, the in-

junction must have been dissolved, because it is apparent that the complainants had a complete remedy at law, namely, by claimants' issue in the attachment suit. This was a case, therefore, where the defendant in the suit on the injunction bond undertook to show that no legal right of the plaintiffs in the attachment suit had been invaded by the issuance of the injunction. The court disposed of the question in a very short opinion in this language: "The dismissal of the suit, by the chancery court, of Baum & Co. against the appellants and others, though made without prejudice, operated as a dissolution of the injunction and entitled the obligees in the injunction bond to sue for its breach. It is too late for the appellees to say that the injunction was rightly sued out. *That it was not is conclusively settled by the decree dissolving it.*" (Italics ours.)

In Somerville v. Mayes, supra, the court held that the right to recover on an injunction bond was "coextensive with its condition, and resort must be had to its terms in determining the rights and liabilities of parties to it. The obligors have a right to stand on its terms. So has the obligee. . . . The dissolution of the injunction is the contingency on which liability to pay was stipulated to arise. The condition was broken when the injunction was dissolved, and the right of action on the bond was then complete. . . . This is a just result, of which the obligors cannot properly complain. It not only flows from their express stipulation by the bond, but it comes within their expectation when they executed it."

In Alexander v. Woods, supra, the court said: "The dismissal of the bill in the chancery court operated as a dissolution of the injunction and *established the fact that it had been wrongfully sued out, and that the appellants here are entitled to recover whatever damages they sustained by the issuing of same.*" (Italics ours.)

In Marshall v. Minter, supra, the court held that equity will regard a party applying for an injunction to restrain

the execution of legal process as proposing or consenting that, if such injunction be wrongfully obtained, or the relief asked shall be refused, the party so applying will put his adversary in the same position he was at the time the injunction was granted.

32 C. J., p. 452, section 782, states the principle in this language: "In an action on an injunction bond to recover the damages provided for thereby, the decision of the court dissolving the injunction that the same was improperly granted is conclusive of that fact, in the absence of fraud and collusion, *and defendant in the action on the bond is not at liberty to go behind the judgment and litigate the question of the right to the injunction."* (Italics ours.)

The result is the same where the injunction proceeding is void for want of jurisdiction of the court to entertain it. Where a complainant has secured an injunction and stayed his adversary's proceedings, and thereby caused him to suffer damages, it is too late for the complainant to set up as a defense in an action on the injunction bond a want of jurisdiction in the court to grant the injunction. He is estopped to say that the court granted the injunction without jurisdiction. It does not lie in the mouth of one who has affirmed the jurisdiction of a court to grant an injunction, where he has accomplished his purpose by the injunction, to afterwards deny such jurisdiction. 32 C. J., p. 453, section 783, and footnote.

It is sometimes a close question whether a court has jurisdiction to grant an injunction in a particular character of case. The supreme court of Texas and the courts of several other states have held that, since political party primary elections and conventions have been provided for by law, the members of a party are given rights which entitled them to resort to the courts for their enforcement. Although our court had held to the contrary, appellants (appellees in the injunction suit) did not so understand our decisions, and in good faith undertook to show the court that those decisions were not appli-

cable. Appellants' contention means that in every injunction case, however close the question of the jurisdiction of the court to grant the injunction might be, if it turned out that the court was without jurisdiction, there would be no liability on the injunction bond.

For like reasons we cannot give our assent to appellants' contention that there is no liability on an injunction bond unless some right of the defendant has been invaded by the issuance of the injunction. In many cases it is an exceedingly close question whether or not by the issuance of an injunction any justiciable right of the defendant has been invaded. Take for illustration a case of this kind: Both A and B claim title to a body of unoccupied timbered land, each claims the land in perfect good faith; B is denuding the land of its merchantable timber and selling it, refusing to recognize A's claim of title; A submits his case to a competent lawyer who advises him that in his judgment he has a good title to the land; A files a bill in the chancery court deraigning his title to the land and charging that B, without any title and without any authority of law, is cutting and removing the merchantable timber from the land, and prays that his title be established by the court and, pending the litigation, and injunction issue restraining B from further committing waste on the land. A gives the required injunction bond, and an injunction is issued and served on B. B consults a competent lawyer who, after a thorough investigation and consideration, advises B that he has a perfect title to the land, and A has no title. B defends the suit. It develops on the trial that, although the best legal minds might differ on the question, neither A nor B has any title to the land, but that it belongs to C. Reaching that conclusion the court dismisses A's bill, which operates as a dissolution of the injunction. If appellants are right in their contention, there would be no breach of the injunction bond, and therefore no liability on it because by the issuance and service of the injunction no right of B's was invaded.

By his injunction bond the complainant guarantees that some right of *his*, recognized by law, has been invaded by the defendant, and if he fails to establish that fact the bond is breached. Furthermore, if liability on the injunction bond depended on whether or not the defendant's rights were invaded by the injunction, we think the fact that the defendant was driven to run the risk of the costs of the cause and the incurring of counsel's fees for defending it would constitute an invasion of his rights.

Appellants contend that Lowenburg v. Klein, 125 Miss. 284, 87 So. 653, is in point in their favor. We do not think it is. It was held in that case that, when an action is based on a contract made in violation of the criminal laws of the state, and the parties to the action are in pari delicto, the courts will not entertain a suit for relief of either against the other, but will leave them as they are found; and, in an injunction suit based upon such a contract, attorney's fees should not be allowed to the defendant upon the dissolution of the injunction. The question involved in that case is a very different one from that here involved. The contract in that case was made in violation of both the criminal laws of the federal and the state governments, and both parties to the contract were equally in the wrong. It is an elementary principle that in such a case the whole subject-matter of the litigation is outlawed, the courts refuse to deal with it at the instance of either party, they wash their hands of the whole matter. It is apparent at once that the present case is entirely outside of any such principle as that. There are some authorities from other states cited in appellants' brief that seem to sustain their position, but we think, and have undertaken to show, that the better reasoning is to the contrary.

Appellees filed an amended bill in this case, by which they made themselves individually and personally complainants in the bill. Appellants contend that appellees had no right to sue either in their official capacities or

as individuals; that they were not enjoined individually but officially, and, if they had any right of action at all, it was to recover such amount as they personally lost as emoluments of their offices by reason of the service of the injunction. By the original bill in the injunction suit appellants sought to enjoin appellees from action both in their official and individual capacities. The republican party in this state is an unincorporated voluntary society. Under the law such a society cannot contract and be contracted with and sue and be sued, but the officers of such a society acting for and on behalf of the society are liable individually. Evans v. Lilly & Co., 95 Miss. 58, 48 So. 612, 21 Ann. Cas. 1087; Alkahest Lyceum System v. Featherstone, 113 Miss. 226, 74 So. 151; Victor v. Adams, 140 Miss. 643, 106 So. 433. Therefore, when appellees employed counsel to represent them in the injunction suit they became personally liable to pay for the services of their counsel, and not in their capacities as officers of the republican party, and the same is true of any outlay of expenses incurred by them as the result of the issuance of the injunction. The damages suffered by appellees on account of the issuance of the injunction was personal damage and not a damage to them in their official capacities. Under the law the injunction could operate on them only as individuals. It could not operate on the republican party for which they were acting. We are of opinion, therefore, that appellees are entitled to recover as individuals whatever damages they suffered on account of the issuance of the injunctions.

The chancellor awarded appellees the sum of seven thousand five hundred dollars for the services of their attorneys in procuring the dissolution of the injunction. Appellants contend that the fee allowed was unreasonable and exorbitant. Six members of the bar testified giving their opinions as to what they thought would be a reasonable fee. Their testimony took rather a wide range. Five of them testified that in their opinion a fee of from

seven thousand five hundred to ten thousand dollars would be reasonable. One testified that in his opinion a fee from seven hundred fifty dollars to one thousand dollars would be reasonable. In determining this question we have taken into consideration the principles laid down by this court in Moss v. Miss. Sanitary Board, 154 Miss. 765, 122 So. 776, and New Orleans, M. & C. R. R. Co. v. Martin, 105 Miss. 230, 62 So. 228, namely, the importance of the litigation, the magnitude of the interests involved, the labor and responsibility of counsel, and the judgment of the chancellor fixing the fee. We have also taken into consideration the well-established rule that such opinion evidence of members of the bar is admissible, but is not conclusive on the court. Humphreys County v. Cashin, 128 Miss. 236, 90 So. 888. The court in determining the question has the right to add to the evidence its opinion based on experience and observation. The majority of the court are of opinion that the fee of seven thousand five hundred dollars allowed by the chancellor was exorbitant, and that it ought to be reduced by one-half, making the fee three thousand seven hundred fifty dollars.

We are of opinion that the chancellor erred further in allowing the expenses of one thousand seven hundred fifty-eight dollars and thirty-seven cents, claimed to have been incurred by appellee on account of the issuance of the injunction. Appellees contended and undertook to show that the republican party represented by them was put to that much additional expense on account of the issuance of the injunction. Without deciding whether appellees would be entitled to recover such expenses if properly proven, we have reached the conclusion that the evidence in this case falls short of proving what expenses were incurred by appellees on account of the issuance of the injunction. The evidence is too vague and uncertain in the following respects: (1) It failed to show that the expenses claimed were necessary expenses; (2) it failed to properly allocate the expenses

incurred before the issuance and service of the injunction and the expenses incurred afterwards.

: The result of these views is: The decree of the chancellor is affirmed in part and reversed in part, and a decree will be entered here in appellees' favor for the sum of three thousand seven hundred fifty dollars, with interest, the costs of this appeal will be divided equally between the parties.

Reversed in part, and affirmed in part.

**Ethridge, J.,** delivered a dissenting opinion.

The appellants and the appellees are all members of the republican party in the state of Mississippi. In the year 1928, prior to the republican National Convention, the appellees, being in control of the party machinery, called state, county, and precinct conventions through the state organization. The call for precinct meetings was not to assemble at the respective voting places or precincts and vote for the delegates to the county conventions, but to assemble at convenient places, and instead of being at the precincts, were at various places, including negro lodges, negro schoolhouses, churches, and other places. The appellants, being members of one faction, different from the appellees, there being two factions in the state, sought to enjoin the holding of these various conventions because the call did not conform to the statute and was illegal, and that they would be deprived of their right to participate in the conventions, as many of the appellants' faction belonged to what is known as the "Lilly White Republicans."

. Section 5866, Code of 1930, provides for the calling of these conventions, and the part thereof pertinent to this discussion is as follows: "The delegates are to be selected by county delegate conventions, to be held in each county. Delegates shall be apportioned equally among the supervisors' districts of each county, or each precinct in the county may be given representation in

the county delegate convention in proportion to the votes cast at the preceding presidential election for its party candidates. The county executive committee shall designate a date and the number of delegates to be elected, giving at least ten days' notice for the precinct elections, on which date the electors at such precinct shall meet at ten o'clock A. M. at the usual voting places, and by secret ballot elect delegates to represent such voting precincts in the county conventions.''

The delegates so elected to the county delegate conventions in turn elect the county executive committee and delegates to the state convention, being entitled to as many delegates in the state convention as the county has representatives in the Legislature. The executive committee is made up of three from each supervisor's district making a total of fifteen for the county. The state convention elects the state executive committee composed of three from each congressional district.

The statute contemplates that the state executive committee of the political party shall fix a time for the holding of the state convention and notify the county executive committee of such fixing, and it is then the duty of the county executive committee to give notice, under the statute above quoted from, of ten days or longer of the holding of the precinct convention, and the number of delegates from that precinct or supervisor's district. The statute fixes the voting precinct as the place where the electors shall meet, the meeting to be at ten o'clock A. M., and directs that the ballot shall be secret.

By other provisions of the chapter on primary elections, it is provided that any person, not nominated as provided therein, shall not hold the office involved.

It will be seen, from the statement made that the precinct meetings should be held at the precincts, that the call in the case at bar was illegal. In Barrett v. Cedar Hill Consol. School Dist., 123 Miss. 370, 85 So. 125, it was held that an election conducted at a private store some little distance from the regular election precinct,

and not at the place designated by law was void although a large majority of the votes of the school district there involved voted affirmatively for the bond issue; and that the place fixed by the election law was one of the fundamentals of elections, and failure to comply with the law in regard thereto made the election absolutely void. This case cites numerous authorities holding in accordance therewith.

In the subsequent case of Edwards et al. v. Board of Supervisors of Bolivar County, 124 Miss. 165, 87 So. 8, the court again held that the holding of an election at the designated place was essential to the validity of the election.

These cases, therefore, clearly establish that the holding of the meetings in the case at bar, for the election of delegates to the county convention, and from that to the state convention, was illegal. Consequently, the injunction sued out was to stop the appellees from holding an illegal precinct convention, and illegal county and state conventions.

The appellants were trying to protect their rights, but resorted to an injunction which, under our decisions, was not permissible, and the injunction was dissolved for that reason alone.

As I understand it, there is no dispute that the so-called precinct and county delegate conventions were illegal.

It is a principle of both law and equity that a party cannot profit by his own wrong. ''Nemo ex proprio dolo consequitur actionem (No one maintains an action arising out of his own wrong)'' is a maxim of the law court, and expresses a fundamental conception of law that no one can profit by his own wrong. Equity has two maxims applicable to this suit, one of which is that he who comes into equity must come with clean hands, and another is that he who seeks equity must do equity.

As the foundation of the case at bar is a wrong injunction to restrain the appellees from doing an unlawful

thing, recovery in this case can only be allowed by violating these fundamental maxims and principles of law.

In 1 C. J. 959, section 52, under the hearing "Illegal or Immoral Transactions," it is said that: "The general principles are well settled that the law will not permit a person to take advantage of or acquire a right of action from his own wrong, that an illegal or immoral transaction cannot be made the basis of an action by one who is a party thereto; and that as between parties in pari delicto the law will aid neither, but will leave them as it finds them. In other words, if plaintiff, in order to establish his claim, must rely in whole or in part upon an illegal or immoral transaction, to which he is a party, the action cannot be maintained. These principles are based upon considerations of public policy and have long been well settled and generally recognized, and while most frequently invoked in regard to illegal or immoral contracts, they are not restricted to cases of this character. These principles apply both at law and in equity, and whether the transaction is executed or executory, or is malum in se or merely malum prohibitum. Upon like principles, a defendant will not be permitted to set up his own wrong in defense of an action by an innocent plaintiff; and it is only upon grounds of public policy and not out of consideration for defendant, that he is permitted to do so in cases where the parties are in pari delicto." Many authorities are cited under this section.

In 1 C. J. page 952, section 48, it is said that, in order to give a right of action, there must be a violation of a legal right.

In the case at bar, there is no such violation. In my opinion, the parties here were in pari delicto. The appellees, complainants in the court below, were wrongfully and unlawfully undertaking to hold political party conventions in such manner as to deprive the other members of the party of their right to attend the meetings at the place required by law and participate therein.

The appellants were only wrong in the remedy they

sought to prevent this unlawful action by the complainants in the court below, appellees here.

The Constitutional Convention itself, in section 247, of the Constitution of 1890, established the policy of requiring primary elections in party conventions to be held fairly, and made it the duty of the legislature to enact laws to secure fairness in party primary elections or conventions, or any means of naming candidates. This duty the legislature has performed by enacting the chapter on primary elections. When the legislature first enacted these primary election laws, the constitutionality of the act was contested, but was upheld as valid in the case of McInnis v. Thames, 80 Miss. 617, 32 So. 286.

Thus, by constitution and by statute, the policy is established in this state that primary elections and party conventions are matters of public concern, and that fairness shall be secured.

By section 5864, Code of 1930, it is provided, among other things, that "all primary elections shall be governed and regulated by the election laws of the state in force at the time the primary election is held, except as herein provided."

Under the general criminal statutes, section 878, Code of 1930, it is provided that: "If any manager, clerk, or any other officer whatever, assisting or engaged in conducting any election, or charged with any duty in reference to any election, shall designedly omit to do any official act required by law, or designedly do any illegal act in relation to any general or special election, by which act or omission the votes taken at any such election in any district shall be lost, or the electors thereof shall be deprived of their sufferage at such election, or shall designedly do any act which shall render such election void, or shall be guilty of any corrupt conduct or partiality in his official capacity at such election, he shall, upon conviction, be imprisoned, in the penitentiary for a term not exceeding two years."

It will thus be seen that, if any party officer shall

designedly do any act which shall render such election void, or be guilty of any corrupt conduct, he shall be imprisoned for two years.

It is clear that, from these statutes, the act which the appellees were attempting to perform in 1928 was, not only illegal, but was a high criminal offense. There was no adjudication in the former suit that the acts of the appellees were legal, but merely that in no event had the chancery court power to prohibit an election of the kind here involved.

The jurisdiction of the subject-matter being absent, the defendants were not under any legal obligation to pay any attention to it, and no cost could be legally rendered against them, had the chancery court sustained the injunction. They could raise the question of jurisdiction when the execution was issued, or other process which undertook to deprive them of their property. Damages can only flow from the invasion of a legal right, or breach of a legal duty.

The appellees had no right to hold the conventions at any other place than that prescribed by law. To do so constituted a breach of the law and public policy of the state. In fact, it amounted to a high crime under the criminal law. See the statute above quoted.

It is fundamental that, to maintain a suit for damages, there must be two things: (1) A legal injury, and (2) damages flowing from such legal injury.

In 2 High on Injunctions (4 Ed.), at page 559, section 1613, it is said that: "In estimating damages sustained by the improper issuance of an injunction the courts proceed upon equitable grounds, and while it is difficult to fix any precise rule or standard for determining damages upon dissolution, it may be said generally that nothing will be allowed which is not the actual, natural and proximate result of the wrong committed. And where no damage has been sustained, none should be assessed. In other words, liability upon the injunction bond is limited to such damages as arise from

the suspension or invasion of a vested legal right by the injunction.''

In Guthrie v. Biethan, 25 Idaho, 706, 139 Pac. 718, 719, an injunction prevented one Muir and others from procuring the payment of property and money on a fraudulent judgment which they had wrongfully obtained. The court held the injunction to have been wrongfully issued; awarded Muir and his associates one hundred twenty-five dollars as damages, which judgment the Supreme Court reversed saying: ''It is a plain rule of law and common sense that one cannot be legally. damaged for being restrained from doing an illegal act. A person cannot sustain legal injury unless he has been wrongfully restrained from doing something he had a legal right to do. . . . Under the law, a person who has been damaged by reason of having been wrongfully restrained by injunction from doing something that he had a legal right to do may recover what damages he has sustained; but the law does not contemplate that a person may be compensated in damages for being restrained from doing a thing he had no legal right to do, for, if he had no legal right to do the act, he cannot be damaged, and has no cause of action if he be enjoined from doing an illegal act.'' See, also, East Tenn. Telephone Co. v. Anderson County Tel. Co., 115 Ky. 488, 74 S. W. 218; Macey v. Titcombe, 19 Ind. 137; Hibbs v. Webster Land Co., 81 Iowa, 285, 46 N. W. 1119; Turnpike Co. v. Kelly, 41 Ohio St. 144; Steuart v. State, 20 Md. 105; Kulp v. Bowen, 122 Pa. 78, 15 Atl. 717; Jamison v. Duncan, 12 La. Ann. 785; Dole v. Hickey, 6 N. H. 496, 32 Atl. 761.

I think the principle has been settled in this state by the case of Lowenburg v. Klein, 125 Miss. 284, 87 So. 653. While that case is not precisely the case at bar, the principles are the same. That case completely negatives the idea that the suing out of an injunction and the giving of bond therefor entitles the person enjoined to damages in all cases.

It is true that in that case the contract for which the

check was given was for liquor, and both parties were guilty of contracting in violation of law, and the decision there stated that the parties were in pari delicto and the court would leave them where it found them. It squarely decided that a party was not entitled to damages and attorneys' fees merely because an injunction had been sued out and dissolved, but that the party had to be legally damaged.

If the principles announced in cases mean anything, this case must be taken as authority for holding that a party who has violated the law cannot recover damages from the wrongful suing out of an injunction to restrain the wrong.

In Chicago, etc., R. R. Co. v. Whitney, Adm'r, etc., 152 Iowa, 520, 132 N. W. 840, 841, the court said: ''If no injunction had been issued, the company could not take the money from the treasurer, under existing conditions without a violation of the law by both the treasurer and itself. If the injunction had been dissolved at any time before final hearing, the company would have been in no better condition than it was in reality in, because in that event no money was due it from the treasurer. The treasurer was alone enjoined. No restraint was placed upon the action of the trustees. In fact, they were sued for a certificate after the dissolution of this injunction. It is not to be presumed that the company would ask the treasurer to violate the law, or that the treasurer would violate it in any event; hence the writ did not, in fact, interfere in any way with the rights of the company. It did not withhold from the company any present right that it had or could exercise without the restraining order. It is therefore apparent that the writ caused no damage to the railway company, nor did it interfere with any lawful or substantial right; and to recover on the bond it must be shown that it was damaged to some extent by the issuance of the writ (Bank of Monroe v. Gifford, 70 Iowa, 580, 31 N. W. 881; Hibbs v. Wester Land Company, 81 Iowa, 285, 46 N. W. 1119), or that some

lawful or substantial right was interfered with by the writ. Weierhauser v. Cole & Johnson, 132 Iowa, 14, 109 N. W. 301.'' See, also, Kilpatrick v. Tunstall, 5 J. J. Marsh (Ky.) 80; Galbreath v. Thayer, 147 Miss. 566, 113 So. 180, 183, 53 A. L. R. 288. In this latter case the court said: ''On the bill of complaint, a temporary injunction was issued restraining the appellees . . . from 'moving off, selling off, or taking off,' of said land any and all timbers thereon, whether standing or down, and upon the proof offered on the motion to dissolve this injunction was dissolved. It is admitted that the proof shows that Mrs. W. A. Lester had no connection whatever with the purchase or removal of timber from this land, and that as to her the injunction was properly dissolved. The proof shows that the appellee Thayer sold to the appellee W. A. Lester certain timber on the leased premises, at the price of ten dollars per thousand feet, and that Lester removed this timber and paid to Thayer the full amount of the purchase price thereof. The uncontradicted proof further shows that all transactions between Thayer and Lester in regard to the timber on this land were fully concluded long prior to the filing of the bill of complaint and the issuance of the injunction restraining Lester from further purchasing, cutting, and removing timber from this land, and that no such further purchase, cutting, or removal was contemplated or in any manner threatened, and, consequently, the injunction was properly dissolved as to Lester. However, since the transaction between Thayer and Lester in reference to this timber had already been fully concluded, and Lester did not claim or assert any right or interest in the timber remaining on the land, the injunction restraining him from cutting and removing any of this timber, a thing which he had no purpose or intention of doing or attempting to do, was ineffective as to him and could in no way affect any of his rights, legal or equitable. Consequently, we do not think the appellee Lester should have been allowed attorneys' fees for securing

the dissolution of this injunction." See, also, Ford v. Loomis, 62 Iowa, 586, 16 N. W. 193, 17 N. W. 910.

In reference to the alleged damages for the second call for a convention, I think the damages could not be allowed, because the first call was clearly illegal, and they were entitled to nothing on that score. The second call was made in pursuance of the law and after the injunction was issued. It would have been necessary to make this call anyway, although it would not have been necessary to have expended money, as it was expended, to stimulate the voters to attend the different meetings of the conventions.

I agree with the majority that there is no sufficient proof to show any damages, even if there were any damages as to this expenditure.

Of course, my view is that there were no damages, and therefore, there could be no recovery of anything.

In reference to the attorneys' fees allowed in the majority opinion, I think it is excessive even at the figures fixed therein. It was clearly excessive to the extent to which it exceeded that allowed by the majority. In allowing attorneys' fees, they must be fixed upon the basis of what it would cost to procure a competent lawyer for a cash fee to be immediately paid. As the suit for which the fee was claimed involved only the filing of a demurrer and a motion to dissolve, and prosecuting an appeal from the lower to the Supreme Court, and argument therein, any competent counsel could have been obtained where the trial took place, for one thousand dollars or one thousand five hundred dollars, and for fifty per cent of that amount on appeal. It is not permitted in such case to select what the highest priced lawyers in the state would charge, but what a lawyer of reasonable ability and competent to handle a suit could be procured for.

I think the judgment should be reversed, and the suit dismissed.